723 A.2d 143

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Daniel GWYNN, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1997.

Decided Nov. 23, 1998.

As Amended Jan. 13, 1999.

Reargument Denied April 13, 1999.

88

90

92

94

Daniel Silverman, Philadelphia, for D. Gwynn.

Catherine Marshall, Philadelphia, Robert A. Graci, Atty. General's Office, Anthony V. Pomeranz, Philadelphia, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Chief Justice.

Following a jury trial in the Court of Common Pleas of Philadelphia County, appellant, Daniel Gwynn, Sr., was found guilty of murder of the first degree, arson, and five counts of aggravated assault. A sentencing hearing took place after which the jury recommended that appellant be sentenced to death, finding that the aggravating circumstances outweighed any mitigating circumstances.[1] The court then imposed the death sentence and, in addition, sentenced appellant to a term of thirty to sixty years imprisonment for arson and five counts of aggravated assault. The present direct appeal ensued.[2] We affirm.

The record reflects the following. On November 19, 1994, at approximately 6:00 a.m., appellant went into an abandoned building where he had formerly lived with several squatters. He forcibly entered the third floor apartment shared by Donald Minnick and Marsha Smith, the deceased victim. Appellant said Mr. Minnick could leave but that Ms. Smith had to stay. Mr. Minnick left to get help from the other occupants of the third floor and when they returned they saw that Ms.

1. The jury found two aggravating circumstances: the killing occurred in the perpetration of a felony; and, appellant knowingly created a risk of death to another person in addition to the victim, 42 Pa.C.S. §§ 9711(d)(6) and (d)(7). It found two mitigating circumstances: appellant had no significant history of prior criminal convictions and other evidence of his character and record and the circumstances of the offense, 42 Pa.C.S. §§ 9711(e)(1) and (e)(8). The jury found that the aggravating circumstances outweighed the mitigating circumstances.

2. Pursuant to an order of this court, the case was remanded to the Court of Common Pleas of Philadelphia County directing the trial court to file a Rule 1925(a) statement, which the court did in June of 1997. Argument was heard during this court's October 1997 term.

Smith's mouth was bloody and she was crying. Appellant then punched Mr. Minnick and a fight ensued. Mr. Minnick and the other occupants then evicted appellant from the building. As appellant left, he said "I'll get you one way or another, all of you.... I will get all of you. If I can't stay in the building, none of you can stay in the building."

The next morning at about 6:00 a.m., the occupants of the building were awakened to shouts of fire. Ms. Smith was in such a panic that she could not jump out of the third floor window to a pile of trash below and, therefore, she died in the fire.[3] All of the other occupants were able to escape from the burning building with varying degrees of injury.

The evidence showed a fire had been set. Gasoline had been poured under two apartment doors, down the stairs leading from the fourth floor, underneath the stairs between the third and fourth floors and down the third floor hallways. The gasoline was then ignited. The fire had been set in such a way that fire blocked the stairs from the third floor apartments. Appellant later confessed that he had poured the gasoline and ignited the fire, allegedly accidentally.

Although appellant has not specifically challenged the sufficiency of the evidence supporting his first-degree murder conviction, we have nonetheless independently reviewed the evidence pursuant to the standard established in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (Pa.1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The applicable standard of review is whether, viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, a jury could find that every element of the crime exists beyond a reasonable doubt. *Commonwealth v. Bryant*, 524 Pa. 564, 574 A.2d 590, 592 (Pa.1990). This standard is equally applicable in cases where the evidence is circumstantial rather than direct, provided that the combination of the evidence links the accused to the crime

3. The medical examiner found that the victim had been burned over 80 percent of her body and died as a result of inhaling smoke, soot and poisonous gases.

beyond a reasonable doubt. *Commonwealth v. Cox,* 546 Pa. 515, 686 A.2d 1279, 1285 (Pa.1996).

To prove murder of the first degree, the Commonwealth must demonstrate that the defendant killed with a specific intent to kill. 18 Pa.C.S. § 2502. The Commonwealth must show that: 1) a human being has unlawfully been killed; 2) the defendant participated in the killing; and 3) the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. Mitchell,* 528 Pa. 546, 599 A.2d 624, 626 (Pa.1991). Circumstantial evidence can itself be sufficient to prove any element or all of the elements of the crime of criminal homicide. *Commonwealth v. Cox, supra,* 686 A.2d at 1285.

The record reflects that the evidence is sufficient to support appellant's conviction of the murder. Here, the record established that when appellant departed the dwelling the first time, he said he would return and that the incident was not over. The fire was intentionally set and ignited at 6:00 a.m. when, based on appellant's previous night's experience, he could assume that the occupants were sleeping. And, as is discussed later, appellant voluntarily confessed to the setting of the fire. On review of the record, the Commonwealth has demonstrated that Marcia Smith was unlawfully killed in an intentional, deliberate and premeditated manner and that appellant perpetrated the killing. We therefore proceed to address appellant's allegations of trial error and trial counsel's ineffectiveness.

The first issue is whether the trial court erred in denying appellant's motion to suppress physical evidence and his statements. A police officer may stop and question a person for investigative purposes. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This investigative detention must be supported by reasonable suspicion that "crime is afoot." *Id.; Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (Pa.1969). This detention subjects the suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of

arrest. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

 Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Powers,* 484 Pa. 198, 398 A.2d 1013 (Pa.1979). Arrest is an act that indicates an intention to take a person into custody or that subjects the person to the will and control of the person making the arrest. *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975, 978 (Pa.1982). The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the officers or the person being seized. *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078, 1085 (Pa.1993).

 The record reflects that police officer Joseph Surina, who had twenty-four years of experience and had worked at the site for ten years, observed appellant on four occasions over the space of thirty minutes on November 30, 1994 between 1:15 a.m. and 1:45 a.m. The officer testified that: the officer was acquainted with most of the persons who "hung out" in the vicinity; the vicinity was a high crime area; a burglary had been reported; appellant was not familiar to him; he saw appellant three times with a knapsack on his back and something sticking out of it; and, each time the officer approached appellant in the police car, appellant walked away from him.

When Officer Surina saw appellant for the fourth time, appellant's previous actions made the officer suspicious and the officer stopped appellant and asked him for some identification. Appellant told the officer his name and said his

identification was in his knapsack. Appellant took off the knapsack and the officer frisked him. During the frisk, appellant kept moving his head suggesting to the officer that he was preparing to run from the officer. Believing that appellant intended to flee, Officer Surina placed appellant inside his patrol car, called for a backup, and then retrieved appellant's identification from the knapsack. Following the arrival of the backup officer, the officers observed appellant trying to escape from the vehicle and they placed appellant in handcuffs. Officer Surina then ran appellant's name through the Pennsylvania Crime Information Center and found that he had five outstanding bench warrants.

The officer arrested appellant on the five bench warrants and transported him to the headquarters. A subsequent search yielded five cigarette lighters and several matchbooks on appellant's person, and two more lighters and additional books of matches in the knapsack. About twelve hours later, Detective Mangoni gave appellant his *Miranda* warnings and warned appellant that he might be charged with murder and other offenses incident to the fire. At 3:00 p.m., appellant gave a statement to the police admitting that he had: fought with the occupants of the building; stolen a container filled with gasoline; spread the gasoline on the floor of the apartment building; accidentally ignited the fire when he threw down a match he had used to ignite his crack pipe; and did not try to help anyone.

On review of the record, no illegal stop, arrest or search occurred. The high incidence of crime in the area and the reported burglary yielded a reasonable conclusion that crime was afoot. The suspicious nature of appellant's behavior and the appearance of the knapsack gave the officer reasonable cause to believe that appellant might be connected to crime. The frisk was appropriate for the protection of the officer's safety.

The remaining actions during the *Terry* stop constituted permissible preservation of the status quo while the officer confirmed or dissipated his suspicions. The preserva-

tion of the status quo occurred: while the officer retrieved the identification from the knapsack to confirm the identity of the appellant; by placing appellant in the police car during this nighttime street encounter in a high-crime area while his identification was checked; and when appellant was hand-cuffed after he tried to escape before the check on identification was completed.

■ Once the existence of the five outstanding bench warrants was revealed, probable cause to arrest existed and the subsequent search was proper. Accordingly, the items found in the search were not the result of an illegal stop or arrest and the confession was not the fruit of a poisonous tree. The trial court properly denied appellant's motion to suppress both appellant's statements and the physical evidence.

■ Appellant argues that he was illegally detained in the police car before his legal arrest and receipt of *Miranda* warnings so that his statements and the physical evidence should be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Miranda* warnings are required where a suspect is subject to custodial interrogation. *Commonwealth v. Ford*, 539 Pa. 85, 650 A.2d 433, 438 (1994). Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. *Commonwealth v. Hughes*, 536 Pa. 355, 639 A.2d 763, 771 (Pa.1994).

■ The challenged statements occurred during the *Terry* stop and at the police station. There were two statements during the *Terry* stop. The first occurred when appellant told the officers his name. The second occurred after the officers told appellant he was wanted on five outstanding bench warrants and said they could understand why appellant wanted to run from them. He responded, "Yeah, I know the detectives were at my house the other night." The officer asked "[w]hy were they over there?" and appellant responded, "They were looking for me for a homicide." Appellant's claim fails here because the identity of appellant is not information that can be

suppressed. *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 68 (Pa.1994). Moreover, the record reflects that the colloquy did not occur as the result of custodial interrogation.

The other statement was made following appellant's receipt of *Miranda* warnings after his arrest. In determining the voluntariness of a confession and the waiver of *Miranda* rights, a court must consider and evaluate the totality of the circumstances attending the confession and the waiver of the rights. *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892, 894–95 (Pa.1975). A reviewing court is to examine the following in determining the independence of a confession: 1) the voluntariness of the confession, including whether *Miranda* warnings were given; 2) the temporal proximity of arrest and confession; 3) the presence of intervening circumstances; and 4) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427 (1975). The Fifth and Sixth Amendments do not apply to the seizure of physical evidence; thus, *Miranda* warnings need not be given prior to such a seizure. *Commonwealth v. Ford, supra*, 650 A.2d at 439 (1994).

Here, the record reflects that appellant's statement occurred following a lawful arrest, and was given consensually following *Miranda* warnings and in the absence of any flagrant misconduct. Once a lawful arrest was made, the alleged prior taint of the earlier detention was erased, particularly in light of the number of hours that elapsed from the original stop. Further, the seizure of the items was not improper, since the seizure occurred as a search incident to a lawful arrest. Appellant's claim is meritless.

Appellant's next argument is that he was deprived of effective assistance of counsel. According to *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 976 (Pa.1987) and its progeny, the defendant must demonstrate: 1) that the underlying claim is of arguable merit; 2) that counsel's performance was unreasonable; and, 3) that counsel's ineffectiveness prejudiced defendant. Counsel is not ineffective for failing to

assert a defense that would not have been beneficial. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802, 806 (Pa. 1985).

Appellant first contends that counsel was ineffective for failing to seek suppression of his written statement because he invoked his Fifth Amendment right to counsel during questioning about an unrelated auto theft three and one-half years before being questioned in this case. Appellant contends that when the police re-arrested him on a bench warrant in the auto theft case, they were required to obtain a waiver from his auto theft counsel before interrogating him about the arson-murder. Once a defendant invokes his right to counsel under the Fifth Amendment, the police cannot re-interrogate him on the crime for which he is arrested or on an unrelated matter without the presence of counsel. *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh'g denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). The re-initiation of questioning does not violate the Fifth Amendment unless the accused has been in continuous custody. *McNeil v. Wisconsin*, 501 U.S. 171, 177, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158, 167 (1991). Here, appellant fails to demonstrate any Fifth Amendment violation because: he fails to offer to prove through his own affidavit that he invoked his right to counsel on the auto theft charge; and, even if such proof were offered, he fails to demonstrate continuous custody as is evidenced by the issuance of the bench warrant on the auto theft charge.[4] Since appellant fails to demonstrate that the underlying claim is of arguable merit, he fails to demonstrate an ineffectiveness claim.[5]

4. Likewise, there is no Sixth Amendment issue. The Sixth Amendment right to counsel is offense-specific and, therefore, does not prevent a suspect from being questioned about an unrelated crime. *McNeil v. Wisconsin*, 501 U.S. at 175, 111 S.Ct. at 2207, 115 L.Ed.2d at 166–67.

5. Appellant also argues his right to counsel under Article I, Section 9 of the Pennsylvania Constitution was violated. Where a defendant asserts violations of the United States and Pennsylvania constitutions but

Appellant next contends that counsel was ineffective for failing to introduce evidence of his alleged good character as relevant to his diminished capacity defense. The diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill. *Commonwealth v. Miller*, 541 Pa. 531, 664 A.2d 1310, 1323 (Pa.1995), *cert. denied*, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). While character evidence is admissible to prove that defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have that intent due to diminished capacity. *Commonwealth v. Morley*, 545 Pa. 420, 681 A.2d 1254, 1260 (Pa.1996). Since good character evidence was not admissible to support a diminished capacity defense, counsel committed no error and appellant has failed to demonstrate his ineffectiveness claim.

Appellant also argues that evidence of his alleged good reputation for honesty should have been admitted to bolster the credibility of his claim to the police that he accidentally started the fire and intended to kill no one when he poured the gasoline. Evidence of truthfulness or honesty may not be introduced to bolster credibility unless defendant's truthfulness or honesty has first been attacked. *Commonwealth v. Fawcett*, 297 Pa.Super. 379, 443 A.2d 1172, 1175 n. 5 (Pa.Super.1982). The record reflects that: appellant's truthfulness or honesty was not attacked; he had been convicted of theft by receiving stolen property before his trial in this case and, therefore, could have been impeached with regard to the trait of truthfulness; and, he failed to identify witnesses who could testify to his truthfulness. Since the claim has no arguable merit, appellant has not demonstrated ineffective assistance of counsel.

claims no heightened protection from the Pennsylvania constitution, this court will assume that the protections afforded by each constitutional provision are co-extensive. *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1334–35 n. 6 (Pa.1995). Appellant fails to support his claim with any citations to cases or any discussion and, therefore, his claim is unreviewable.

 Appellant's next claim of ineffectiveness is that counsel failed to introduce expert testimony on the defense of diminished capacity. When a defendant claims that expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence. *Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471, 477 (1998); *Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251, 1265 (Pa.1994). Unless there is an identified medical witness who at the time of the trial was willing to offer testimony favorable to defendant's alleged diminished capacity defense, counsel is not ineffective for failing to present such expert medical testimony. *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728, 735 (Pa.1987).

Appellant's claim fails because he can neither articulate what evidence was available nor identify the witness who was willing to offer such evidence. The appellate record contains an affidavit from appellant's purported expert witness, John Guerin, Ph.D. The witness admits that he had never examined defendant and that he can not offer an opinion whether appellant suffered from "cognitive disfunctioning" at the time of the murder. Appellant fails to demonstrate error.

 Appellant's next ineffectiveness claim is that counsel failed to object to alleged prosecutorial misconduct during closing argument. A prosecutor is permitted to exercise latitude in presenting a case to the jury. *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300, 309 (Pa.1987). Further, the prosecutor is permitted to employ a certain "oratorical flair." *Commonwealth v. Peterkin*, 538 Pa. 455, 649 A.2d 121, 125 (1994). Even where language is improper, a new trial is only required when its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101, 1109 (Pa.1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990).

Here, the remarks to which appellant objects were made by the prosecutor in the closing argument. The prosecutor's remarks were in response to defense counsel's attack on the credibility of the Commonwealth's witnesses and assertion that appellant visited the apartment building to apologize to the victims for his behavior the previous day. Appellant has failed to demonstrate that the prosecution acted improperly or, assuming that the remarks were improper, that the verdict was not based on the evidence of appellant's guilt. Appellant fails to demonstrate ineffective assistance of counsel.

Appellant next claims that the trial court abused its discretion in permitting the jury to learn that appellant was wanted on five unrelated bench warrants. Evidence implying other crimes may be introduced when the evidence has a proper evidentiary purpose and is not used merely to demonstrate that the defendant is a person of bad character with a propensity to commit crime. *Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603, 607 (Pa.1993).

Here, the record reflects that the evidence of the unrelated bench warrants explained why the appellant was arrested which was, in turn, relevant to rebut appellant's assertion that his confession was coerced and involuntary by demonstrating that appellant was in lawful custody at the time of his confession. Further, the record reflects that the trial court instructed the jury not to use the bench warrants as evidence of guilt as the warrants were introduced solely as evidence of the factual development of the case. A jury is presumed to follow the court's instructions. *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97, 105 (Pa.1995). No error has been demonstrated.

Appellant next claims the trial court abused its discretion by admitting evidence of the reactions of a trained accelerant-detection dog. Admission of evidence is largely within the discretion of the trial judge as long as a proper foundation is laid to show the relevance of proffered evidence, and the question becomes what weight should be assigned to it

by the fact finder. *Commonwealth v. Edmiston, supra*, 634 A.2d at 1088.

Here, Lieutenant Czajkowski, the handler of Gentry, the accelerant-detection dog, testified that he had spent six weeks in training with Gentry, who had previously been trained in the detection of hydrocarbon-based fuels, and that Gentry had correctly detected the presence of gasoline thousands of times without a mistake. The dog's reactions indicating the presence of gasoline in four locations of the subject apartment building were, thus, relevant and sufficiently reliable to permit their admission as proof of arson.

We also note that Gentry's reactions were not the sole evidence that gasoline was poured on the locations. Experts in fire detection testified, based on burn patterns created by the fire, that gasoline has been poured on at least four areas of the building. The trial court did not abuse its discretion in its admission of testimony concerning Gentry's reactions and, even if it is assumed the court did, the admission was not prejudicial because of the testimony of the other witnesses concerning the gasoline.

Appellant next claims the trial court erred when it failed to charge the jury on simple assault. A defendant's failure to challenge the jury charge before the jury retires to deliberate prevents appellate review. *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30, 33 (1976). A defendant is entitled to a charge on a lesser-included offense only where the offense has been made an issue in the case and the evidence would reasonably support such a verdict. *Commonwealth v. Yarris*, 519 Pa. 571, 549 A.2d 513, 527 (Pa.1988).

Here, appellant's claim fails for a number of reasons. First, the issue was waived as the challenge to the instruction occurred subsequent to the jury deliberations. Second, the record reflects that when appellant's threat to "get" the victims is coupled with the deliberate pouring of gasoline on the floors of the building and the hospitalization of two of the victims, the jury, rationally, could not have found appellant guilty of simple assault, since the evidence supports a finding

of intent to inflict serious bodily injury. Third, even if the jury had been given the simple assault instruction, appellant can not demonstrate that the jury would have returned a simple assault verdict.

Fourth, even if he could demonstrate all of the above, appellant has failed to demonstrate prejudice. He argues that the result of the penalty phase would have been different had the jury weighed convictions of misdemeanors (simple assault) instead of felonies (aggravated assault). The record reflects that the sentencing jury found two mitigating circumstances, one of which was that appellant had "no significant history of prior criminal convictions." 42 Pa.C.S. § 9711(e)(1). Thus, appellant's argument is that if the convictions had been misdemeanors and not felonies, the mitigating circumstances would have been weighed differently by the sentencing jury so that appellant would have received a life term and not a death sentence. The record reflects no support for this argument and we will not engage in speculation. Appellant's claim is meritless.

▮ Appellant then argues that the trial court erred in failing to instruct the jury on murder of the second degree, i.e., felony murder, because a burglary was involved, and that trial counsel was ineffective for failing to seek the instruction. The record reflects that burglary was not charged. It is difficult to see how counsel could be deemed ineffective for failing to seek an instruction on a crime that was not charged. Further, the trial court charged the jury that if the jury found appellant guilty of arson, it could return a verdict of murder in the second degree. This claim is meritless.

▮ Next, appellant argues that the trial court erred in the penalty phase by failing to give, and trial counsel was ineffective for failing to request, a cautionary instruction that the jury disregard the guilt phase evidence about the five outstanding bench warrants and appellant's vandalism.[6]

---

6. A waiver occurred here as counsel failed to request the instruction in a timely fashion; however, in light of the nature of this case, we consider the issue.

Here, the failure to request the instruction could be viewed as reasonable penalty phase strategy in order not to remind the jury of this evidence. Further, at trial, the court instructed the jury that the jury could not use this evidence in considering appellant's guilt. Also, the penalty phase court instructed the jury to consider only two aggravating factors, neither of which include the outstanding warrants or acts of vandalism, i.e., killing while in the perpetration of a felony and creation of a grave risk of death to another in addition to the victim. This claim fails.

■ Appellant then contends that trial counsel was ineffective for failing to request a sentencing jury instruction concerning the nature of a life sentence. Appellant essentially argues that, under the authority of *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the trial court erred by failing to instruct the sentencing jury that "life sentence" means "life without parole." In *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 888–89 (1995), we stated that "*Simmons* mandates that where future dangerousness is at issue and a specific request is made by the capital defendant, it is a denial of due process to refuse to tell a jury what the term 'life sentence' means." [7]

Here, the record reflects that the trial court instructed the jury on life without parole as follows: "[y]ou should be fair and do not let yourself be influenced by passion, or prejudice, or sympathy. Now remember, your verdict is not merely a recommendation. It actually fixes the punishment at death or imprisonment without parole." Under the current state of the law, no "life sentence" instruction was required in appellant's case under *Simmons* since the prosecutor did not assert appellant's future dangerousness and appellant did not request the instruction. *But see Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 43 (Pa.1998) (Nigro, J., concurring, joined by this author) (better practice and policy would be to give a *Simmons* instruction in all death penalty cases, whether or not future dangerousness is raised as an issue). Further, appel-

7. Neither appellant nor the jury requested an instruction concerning the definition of "life sentence."

lant has failed to demonstrate any error on the part of counsel in not requesting the instruction since he was not entitled to the instruction in the first place. This claim fails.

 Appellant also argues that the Eighth Amendment requires a sentencing jury to be informed of what "life imprisonment" means, i.e., no possibility of parole. A state may not limit consideration by the sentencer of relevant mitigating circumstances. *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). Information on the unavailability of parole may rebut a future dangerousness claim but is not relevant to proof of a mitigating circumstance. Here, the record reflects, as is quoted above, that the jury was informed by the court of what life sentence meant and that, in any event, the court did not limit the jury's consideration of mitigating evidence in this context. Appellant has failed to demonstrate an Eighth Amendment violation.[8]

Finally, appellant claims that counsel was ineffective for failing to present expert testimony as to extreme mental disturbance, 42 Pa.C.S. § 9711(e)(2), and impaired capacity to conform conduct to the law, 42 Pa.C.S. § 9711(e)(3). The record reflects that counsel presented nine witnesses in support of these mitigating factors. These witnesses testified about changes in appellant's behavior when he became involved with drugs, his history of being subject to abuse and abandonment by his mother, and his hardships in life, including infidelity by his girlfriends. As stated above, the affidavit of the proposed expert indicates that he would not have supported appellant in these assertions. The record supports the trial court's conclusion that "there is no showing that the presentation of the expert testimony would have had an impact on the outcome of the case." This claim has no merit.

---

**8.** Appellant also challenges the constitutionality of the aggravating factor, killing while in perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), because, after he was sentenced for an arson murder, "carrying a firearm without a license" was reclassified as a felony. Clearly, appellant has no standing to raise this issue as the change in the classification occurred subsequent to his sentencing and the jury was not presented with "carrying a firearm without a license" as a factor.

The order of the Court of Common Pleas of Philadelphia County is affirmed.[9]

Finally, in accordance with our duty to review sentences of death from the standpoint of their proportionality to sentences imposed in similar cases, 42 Pa.C.S. § 9711(h)(3)(iii), we have reviewed the sentence imposed upon appellant in light of sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts. *See Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, 707–08 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). We perceive no excess or disproportionality in the sentence imposed.

Justice CAPPY concurs in the result.

Justice NIGRO files a dissenting opinion which is joined by Justice ZAPPALA.

NIGRO, Justice, dissenting.

I disagree with the majority's conclusion that when Appellant was placed in the officer's patrol car, he was not illegally arrested. Since I find that Appellant was arrested and that the arresting officer did not have probable cause, I believe the trial court erred in denying Appellant's motion to suppress.

This Court has recognized that there are three categories of interaction between citizens and the police. As explained in *Commonwealth v. Ellis,* 541 Pa. 285, 293–94, 662 A.2d 1043, 1047–48 (1995):

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as

9. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor, 42 Pa.C.S. § 9711(i).

to constitute the functional equivalent of an arrest. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, an arrest or "custodial detention" must be supported by probable cause. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378 (1992)(footnote omitted).

As recognized by the majority, an arrest is an act that indicates an intention to take a person into custody or that subjects the person to the will and control of the person making the arrest. *Commonwealth v. Lovette,* 498 Pa. 665, 671, 450 A.2d 975, 978 (1982). Probable cause to arrest exists where the facts and circumstances within the police officer's knowledge, and of which the officer has reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that an offense has been committed. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Powers,* 484 Pa. 198, 201, 398 A.2d 1013, 1014 (1979).

The majority states that a police officer saw Appellant four times between 1:15 a.m. and 1:45 a.m. in a high crime area in which he had worked for ten years. The officer testified that while he knew most of the people who frequented the area, Appellant was not familiar. The officer further testified that a burglary had been reported and that Appellant had a knapsack with something sticking out of it. He stated that each time he approached Appellant in his car, Appellant walked away from him. The fourth time the officer saw Appellant, he stopped him and asked for identification. Appellant told the officer his name and said that his identification was in his knapsack. Appellant took off the knapsack and the officer frisked him. The officer testified that he believed Appellant was going to flee because he kept moving his head. As a result, he placed Appellant inside his patrol car. The officer then called for back-up assistance and retrieved Appellant's identification from his knapsack. The back-up officer arrived, and when they saw Appellant try to get out of the car, they handcuffed him. The officer then ran Appellant's name

through the Pennsylvania Crime Information Center and learned he had outstanding bench warrants.

Contrary to the majority, I do not find that the officer's placement of Appellant in his patrol car was part of an investigative detention. The officer was justified in stopping Appellant based upon a reasonable suspicion that crime was afoot. The officer properly asked Appellant for identification. In addition, the officer lawfully frisked Appellant to dispel a concern for his safety. He found no weapon on Appellant's person. When Appellant was then placed in the patrol car and handcuffed, he was under arrest. Appellant was taken into the officer's custody and subjected to his will and control.

Since an arrest occurred, probable cause was required. However, when Appellant was placed inside the car, he was not engaged in any act that would cause a person of reasonable caution to believe that he committed a crime. The report of a burglary and the officer's belief that Appellant looked suspicious did not justify arresting Appellant. Thus, probable cause was lacking and Appellant was illegally arrested. While Appellant could have been lawfully arrested after the officer learned that he had outstanding bench warrants, the officer was not free to detain Appellant while he investigated his identity. Once Appellant produced identification, he was free to go.[1]

The trial court also found that Appellant was arrested when he was placed in the police car but found this fact of no moment because no search took place until after probable cause to arrest him had been established based upon the discovery of the outstanding bench warrants. The trial court improperly justified the subsequent search based upon probable cause obtained during an illegal arrest. Accordingly, the trial court erred in denying the suppression motion.

Justice ZAPPALA joins in the dissenting opinion.

---

**1.** The majority's conclusion would appear to entail that if information about Appellant was not readily available through the Pennsylvania Crime Information Center, the officer could have legally detained him in his car while he investigated his identity. Allowing such a detention goes well beyond a lawful investigative stop.