J-S62007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GEORGE BROWN | |
| Appellant | No. 2023 MDA 2015 |

Appeal from the Judgment of Sentence October 20, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004546-2014

BEFORE:  GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 30, 2016**

A jury found George Brown guilty of second degree murder, robbery, conspiracy to commit robbery, and carrying firearms without a license.[1]  The essence of the case is that Brown robbed and murdered the victim during a sale of illegal drugs on December 12, 2013.  The trial court sentenced Brown to life imprisonment on his murder conviction and concurrent terms of 2½ - 5 years' imprisonment on the robbery and conspiracy convictions.[2]  Brown filed a timely notice of direct appeal, and both Brown and the trial court complied with Pa.R.A.P. 1925.  We affirm.

_____

[1] 18 Pa.C.S. §§ 2502, 3701, 903 and 6106, respectively.

[2] The trial court imposed no further penalty on the firearms conviction.

Brown raises a single issue in this appeal: "Did the trial court commit an error of law when it denied [Brown's] motion to suppress evidence regarding a custodial statement to police, as said statement was obtained in violation of [Brown's] constitutional right against self-incrimination?"  Brief For Appellant, at 5.

In an appeal from the denial of a motion to suppress,

> [our] standard of review … is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.  Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa.2010).

The record supports the following findings of fact[3] made by the trial court:

---

[3] As a preliminary matter, we note the trial court failed to enter findings of fact and conclusions of law following the suppression hearing. **See** Pa.R.Crim.P. 581(I) (trial court must enter on record findings of fact and conclusions of law at end of suppression hearing).  Where a trial court fails to abide by Rule 581(I), however, this Court may look at the trial court's
*(Footnote Continued Next Page)*

A suppression hearing was held on August 4, 2015. The first witness was Detective John O'Connor with the Harrisburg City Police. In connection with the murder, Detective O'Connor was assisting multiple detectives with a search warrant for a home in the 2200 block of Logan Street, which turned out to be vacant. A neighbor told the detectives that Sam Sims, [Brown]'s brother, lived on the 2100 block of North Fourth Street, and gave them a good description of the home. The detectives went to the house and were told that [Brown] was not there. [Brown]'s mother and brother were there, and the detectives told the mother what they knew about the case. [Brown]'s mother called [Brown] and, while the detectives were still in the home, [Brown] came back to the house. Detective O'Connor testified that [Brown] was friendly, sober, talkative, and willing to help out. Detective O'Connor told [Brown] that Detective Richard Iachini wanted to talk to him about a homicide and asked if he would be willing to come to the police station with them. [Brown] said 'sure.' Specifically, Detective [O'Connor] knew that an individual was shot inside of a vehicle in the 2100 block of North Fourth Street and a cell phone was recovered in the car next to the victim. The cell phone belonged to [Brown].

Detective O'Connor asked [Brown] if he wanted a ride to the police station, to which [Brown] replied, 'sure.' Detective O'Connor and Corporal Olivera drove him to the police department in an unmarked car, with no handcuffs, and no 'cage' between the front and back seats. [Brown] sat in the back seat with Detective O'Connor, and the tone of the trip to the station was 'friendly and cordial.' When they arrived at the station, they took [Brown] to a conference room. Besides [Brown], only Detective O'Connor and Detective Iachini were present. Detective O'Connor testified that the lead detective, Detective Iachini, was the one doing the questioning. After some initial questioning, Detective Iachini started inquiring about the cell phone, and it was at that point that Detective O'Connor

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Rule 1925(a) opinion to garner findings of fact and conclusions of law. ***Commonwealth v. Stevenson***, 832 A.2d 1123, 1126 (Pa.Super.2003). Here, the trial court issued a 1925(a) opinion that adequately relates the court's findings of fact and conclusions of law. Thus, we will review Brown's argument. ***Id.***

- 3 -

issued [Brown] his *Miranda*[4] rights. When asked why he did not administer [Brown] his rights initially, Detective O'Connor testified that he 'felt he was more of a witness than he was an accused.' Following the *Miranda* warnings, [Brown] indicated that he did not wish to speak any further. The interview was terminated.

Detective Iachini also testified at the suppression hearing. His testimony was consistent with Detective O'Connor's testimony. He stated that 'the initial questions were kind of just some background stuff...informal. [O]nce I started asking [Brown] about the phone is when we decided to *Mirandize* him.' After the interview was terminated, Detective Iachini made a call to the District Attorney's Office and the District Attorney told him to release [Brown] at that point.

Pa.R.A.P. 1925 Opinion, at 2-3.

The Commonwealth contends that the suppression record demonstrates, and the trial court properly found, that Brown was not in custody, and therefore the trial court properly denied Brown's motion to suppress. We agree. "A person is in custody for *Miranda* purposes only when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson*, 727 A.2d 1089, 1100 (Pa.1999). The United States Supreme Court has elaborated that, in determining whether an individual is in custody, the "ultimate inquiry is ... whether there [is] a formal arrest or restraint on freedom of movement of the degree associated with a formal

_____

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

arrest." ***Stansbury v. California***, 511 U.S. 318, 322 (1994). The question of custody is an objective one, focusing on the totality of the circumstance, with due consideration given to the reasonable impression conveyed upon the person being questioned. ***Commonwealth v. Gwynn***, 723 A.2d 143, 148 (Pa.1998), ***cert. denied***, 528 U.S. 969 (1999).

Pennsylvania courts have held multiple times that a suspect is not in custody when he voluntarily accompanies officers to the police station and answers their questions under non-coercive circumstances. ***See Commonwealth v. Luster***, 71 A.3d 1029, 1051 (Pa.2013) (murder defendant was not subject to "custodial interrogation" for ***Miranda*** purposes when he spoke to officer in police car; defendant voluntarily accompanied officer to state police barracks for questioning regarding victim's death, defendant was not handcuffed and was accompanied by his sister, and defendant initiated conversation with officer regarding events of prior evening); ***Commonwealth v. Freeman***, 128 A.3d 1231, 1241 (Pa.Super.2015) (murder defendant was not in custody, and thus ***Miranda*** warnings were not required, when he made statements to detectives regarding his involvement in home invasion, kidnapping, and murder; defendant voluntarily accompanied detectives to police station; detectives did not show, use, threaten to use force, transfer defendant against his will, or restrain defendant; detectives were dressed in formal business attire, drove unmarked sedan, had their firearms concealed, and reminded

defendant multiple times that he was not under arrest and was free to leave at any time).

Here, Brown came into contact with detectives at his home, where his mother had allowed a consensual search of the premises. The detectives introduced themselves and had a cordial, friendly conversation with Brown. They informed Brown that the lead detective in the matter wanted to speak with him about a homicide and asked him if he was willing to come to the police station. This was a request, not a demand. Brown voluntarily agreed to accompany the officers to meet with Detective Iachini at the police station. The detectives offered to give Brown a ride to the station, and Brown voluntarily accepted their offer. He was not placed in handcuffs, he entered the car of his own volition, and there was no cage in the car. His movement and freedom were not restricted in any way. Upon arrival at the police station, Brown voluntarily exited the car and walked into the conference room. The tone was friendly and cordial. When the interview turned to the fact that Brown's cell phone was in the car, the detectives gave Brown *Miranda* warnings. He invoked his rights, the interview stopped, and Brown walked out of the police station. As in *Luster* and *Freeman*, Brown was not in custody during the interview. Indeed, he was not in custody after issuance of *Miranda* warnings, because he promptly stated that he did not wish to speak further and left the police station.

While Brown labels his encounter with the detectives as an "interrogation", the fact remains that Brown consented to the interview and never had his freedom restricted. Brown argues that because the police contacted the District Attorney's office for direction on whether to charge Brown, he therefore was in custody. However, that is not part of the analysis. The District Attorney's opinion as to whether there was enough evidence to charge Brown is not relevant to whether the detectives restricted Brown's freedom of movement in a manner such that a reasonable person would not have felt free to leave. Because the detectives never restricted Brown's freedom of movement or threatened or coerced him in any way, he was never in custody, and his statements to the detectives were not subject to suppression.

For these reasons, the trial court properly denied Brown's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2016