J-A23040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                              :                PENNSYLVANIA
                              :
             v.                :
                              :
                              :
RAYMOND A. MIKELONIS SR.       :
                              :
           Appellant      :      No. 611 WDA 2024

Appeal from the Judgment of Sentence Entered April 30, 2024
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000783-2022

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:        **FILED: November 25, 2025**

Raymond A. Mikelonis Sr. (hereinafter, "Appellant") appeals from the judgment of sentence entered on April 30, 2024. Specifically, he argues that the trial court abused its discretion in denying his request for funds to hire an independent mental health expert to evaluate him regarding his classification as a sexually violent predator ("SVP"). After careful review, we affirm.

Appellant was charged on July 27, 2022, with two counts of sexual abuse of children/dissemination of child pornography (18 Pa.C.S. § 6312(c)), two counts of sexual abuse of children/possession of child pornography (18 Pa.C.S. § 6312(d)), and one count of criminal use of a communication facility (18 Pa.C.S. § 7512(a)). On January 23, 2023, Appellant entered into a negotiated plea agreement in which he agreed to plead guilty on all counts in exchange for the Commonwealth's recommendation of a minimum sentence of 15 years

of incarceration. Following a hearing, the court accepted Appellant's plea. Sentencing was deferred pending an SVP evaluation.

On January 24, 2023, the trial court ordered Appellant to be evaluated by the Pennsylvania Sexual Offenders Assessment Board ("SOAB") on the question of whether he is an SVP pursuant to 42 Pa.C.S. § 9799.24. The SOAB found, after this assessment, that Appellant fit the criteria to be designated an SVP. The trial court then scheduled a hearing to determine Appellant's SVP status.

On June 21, 2023, trial counsel filed a motion seeking permission to withdraw his representation of Appellant. The motion was granted on August 31, 2023. After an unavoidable delay in finding a new attorney to take Appellant's case, the court appointed new counsel on January 21, 2024. On February 8, 2024, Appellant filed a motion seeking both to withdraw his guilty plea and funding to hire his own expert for an independent SVP determination. After a hearing, the motions were each denied by the orders filed March 1, 2024. Appellant was sentenced on April 24, 2024, to an aggregate sentence of 15 to 40 years' incarceration followed by 17 years of probation pursuant to the negotiated terms of his plea.[1] Appellant was also deemed to be an SVP. Order, filed 4/26/24. Appellant filed a timely notice of appeal on May 24, 2024. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises one issue on appeal:

---

[1] Although the sentencing order was dated April 24, 2024, the docket indicates that the order was filed on April 30, 2024.

Whether the lower court erred in denying Appellant's request for funding to retain an expert to perform a[n SVP] assessment?

Appellant's Brief at 4.

"The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion." ***Commonwealth v. Cannon***, 954 A.2d 1222, 1226 (Pa. Super. 2008) (quoting ***Commonwealth v. Albrecht***, 720 A.2d 693, 707 (Pa. 1998)).

The classification of a sexual offender as an SVP occurs pursuant to 42 Pa.C.S. § 9799.24. The assessment occurs after conviction but before sentencing. 42 Pa.C.S. § 9799.24(a). Once the trial court orders an assessment to be carried out, a member of the SOAB is assigned to the case and will examine the facts of the current offense, the offender's criminal history, any personal characteristics to the offender, and other statutory factors to determine whether SVP status is appropriate. 42 Pa.C.S. § 9799.24(b). The SOAB board member then submits a written report within 90 days. 42 Pa.C.S. § 9799.24(d). Thereafter, the district attorney files a praecipe to conduct an SVP hearing. 42 Pa.C.S. § 9799.24(e)(1). With respect to the SVP hearing, the statute provides:

> The individual and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses. In addition, the individual shall have the right to counsel and to have an attorney appointed to represent the individual if the individual cannot afford one. If the individual requests another expert assessment, the individual shall provide

a copy of the expert assessment to the district attorney prior to the hearing.

42 Pa.C.S. § 9799.24(e)(2). At the hearing, prior to imposing sentence, the court will determine whether the Commonwealth has proven by clear and convincing evidence that the offender is an SVP. 42 Pa.C.S. § 9799.24(e)(3).

Whether an offender was entitled to the assistance of an expert in considering an SVP determination was first addressed in **Commonwealth v. Curnutte**, 871 A.2d 839 (Pa. Super. 2005). Both prior to and during Curnutte's SVP hearing, he had argued for the appointment of a court-appointed expert to refute the findings of the SOAB evaluator. Curnutte asserted that his right to due process was violated because he was indigent and could not afford to hire an independent expert on the SVP issue. *Id.* at 840-41. While recognizing that the case provided an issue of first impression, this Court explained,

> [t]he statute grants a defendant the right to counsel for an SVP proceeding. If counsel cannot receive the assistance of an expert to assist in reviewing the report of the expert testimony of a member of the [SOAB] and cannot hire an expert to refute such a finding, the right to counsel would be meaningless. Therefore, we conclude that he has such a right.

*Id.* at 841. This Court further stated: "We do not believe the legislature intended to give a defendant the right to court-appointed counsel but then deny counsel the resources he needs to effectively represent his client at an SVP proceeding." *Id.* at 842. Nevertheless, this Court also recognized that "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one. There must be some showing as to the

- 4 -

content and relevancy of the proposed expert testimony before such a request will be granted." ***Id.*** (cleaned up).

In the case *sub judice*, the trial court explained its refusal to grant funding for a defense expert on the SVP determination, as follows:

> [Appellant] indicated that he wished to hire an expert to rebut the SOAB's finding. Critically, [Appellant] only mentioned a possible expert, but had no specific expert in mind. Moreover, the [c]ourt is without the resources to pay for [Appellant's] expert witnesses. Therefore, the [c]ourt did not err in denying [Appellant's] [m]otion for [f]unds.

Trial Court Opinion, 8/20/24, at 4-5.

The trial court makes an important point here. "When a defendant claims that expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence." ***Commonwealth v. Gwynn***, 723 A.2d 143, 151 (Pa. 1998). Appellant did not do this. At the hearing in which Appellant requested funds for an independent evaluation, the entirety of the discussion was limited to less than a page in the transcript:

> [DEFENSE COUNSEL]: [...T]here was an evaluation performed by the [SOAB]; that evaluation resulted in a report indicating that [Appellant] meets the criteria to be determined a[n SVP]. I believe the [c]ourt is aware, he previously had two matters, I think back in 2006, 2011. Those findings were put on the record in those cases, you know, separately in those cases, indicating he's a[n] [SVP].
>
> In neither of those cases, nor in this case, has he had the opportunity to have an independent evaluation performed. He, obviously, does not have the funds to secure a psychiatrist to perform such an evaluation. So I'd be asking for funding, as he's indigent; and I believe he would have the right to contest this finding.

- 5 -

> THE COURT: I don't believe he has a right to funding. We don't have the funding. We've never provided any funding to anybody. I'm going to deny your motion for funding, [counsel]. Okay. Thank you very much.

N.T., 2/27/24, at 7-8. The written motion for funding filed by Appellant's counsel on February 8, 2024, provides no additional detail as to which expert Appellant wanted to perform an independent SVP evaluation. The motion merely states:

> [Appellant] disagrees with [the SOAB] assessment, and desires to have a private evaluation take place such that his own expert can testify at any upcoming [h]earing as to said designation. … [Appellant's] indigent status should not preclude him from presenting evidence that a non-indigent person would have the means to present.

Motion for Funding, 2/8/24, at ¶¶ 4, 6.

In **Gwynn**, our Supreme Court considered a claim of ineffective assistance of counsel due to counsel's pre-trial failure to request funding for an expert to testify about the defendant's diminished capacity in a death penalty case. **Gwynn**, 723 A.2d at 151. In connection with his funding request, Gwynn had proffered an affidavit from a purported expert witness, John Guerin, Ph.D. **Id.** However, Dr. Guerin admitted in this affidavit that he "had never examined defendant and that he can not [*sic*] offer an opinion whether [the] appellant suffered from 'cognitive disfunctioning' at the time of the murder." **Id.** In addressing Gwynn's claim of error, our Supreme Court stated: "Unless there is an identified medical witness who at the time of the trial was willing to offer testimony favorable to [the] defendant's alleged diminished capacity defense, counsel is not ineffective for failing to present

such expert medical testimony." **Id.** Accordingly, Gwynn failed to garner relief on his claim. **Id. See also Commonwealth v. Nabried**, 327 A.3d 315, 327 (Pa. Super. 2024) (stating the general rule that a trial court "will not be found to have abused its discretion in the absence of a clear showing as to the content, relevancy and materiality of the testimony of the potential witnesses").

The same result applies here. Appellant never mentioned any specific witness that he wished to have testify, and who was willing to testify, regarding his SVP status. He also failed to argue how his expert's conclusion could have differed from that of the SOAB expert, considering his history of twice being deemed an SVP in the past. We reiterate that "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one. **There must be some showing as to the content and relevancy of the proposed expert testimony before such a request will be granted**." **Curnutte**, 871 A.2d at 842 (citations omitted; emphasis added); **see also Nabried**, 327 A.3d at 327 (same). Appellant's failure to even suggest a specific expert that he wished to perform his independent SVP evaluation results in the denial of his issue on appeal.

Moreover, we note that Appellant has failed to account for the fact that he has **twice before** been deemed an SVP. The SOAB member who testified at Appellant's SVP hearing noted that, while he did not personally participate in the current SVP evaluation, Appellant had previously participated in an SVP assessment and been interviewed by another SOAB member. N.T., 4/24/24,

at 10. The evaluator stressed that she was interested in Appellant's history of sexual deviance, as she was looking for patterns of behavior and whether Appellant exhibited "a sustained and persistent sexual interest" in prepubescent children. *Id.* at 10-13. The evaluator noted that Appellant had been convicted in 2006 for multiple counts of indecent assault and indecent exposure related to his sexual interactions with three different young children. *Id.* at 13. Then, in 2011, Appellant was convicted for possessing child pornography. *Id.* at 18. After both of these convictions, Appellant was deemed to be an SVP. *Id.* at 15. The evaluator stressed that Appellant's third conviction for a related offense was "another example of this sustained and persistent sexual interest that keeps him from being able to control himself, and so he continues to act [out] on these urges based on those interests, which is consistent with sexual deviance and pedophilic disorder specifically." *Id.*

Further, the evaluator noted that, for his 2006 and 2011 convictions, Appellant had served the maximum sentence of incarceration; the denial of parole indicated Appellant's refusal to accept treatment for his disorder. *Id.* at 15-16. Moreover, Appellant was still under supervision for the 2011 sentence when he was arrested for the current offense. *Id.* at 16. When asked what this offense history signified about Appellant, the evaluator stated that it was

> related to this intense sexual interest that we cannot control our urges, and so we act out, even though we know the consequences of our behavior because we have previously been sanctioned, and

we are currently under supervision. But that arousal and interest is so intense that we cannot control it.

*Id.* Appellant was diagnosed with pedophilic disorder, a sexual deviance involving prepubescent children. *Id.* at 18. In sum, because of the long history of Appellant's pedophilic disorder, which includes both touching and non-touching behavior, and because pedophilic disorders predispose a person to commit sexually violent offenses, Appellant was deemed to meet the criteria of an SVP. *Id.* at 24.

Based upon Appellant's history of being declared an SVP in both 2006 and 2011 for sexual offenses dealing with children, it is wholly unclear that any additional evaluation could credibly suggest that Appellant does not fit the definition of an SVP. The SOAB evaluator indicated that Appellant suffers from a life-long condition:

> Once we have this sustained and persistent sexual interest, we have it. We cannot extinguish that interest. You hope to learn to manage it over time, but you can't get rid of it. So once it is there, it is always there. One of the things about pedophilic disorder that we often talk about is that it wax[es] and wanes, so it may come and go, based on stressors on our life, based on opportunity to offend, or other circumstances entirely. But once it is there, it is there.

*Id.* at 22. Accordingly, while the trial court erred in finding that a prospective SVP offender had no right to an independent SVP evaluation, the denial of such *in the present case* cannot be deemed an abuse of the court's ample discretion in this area. In addition to Appellant's failing to proffer a specific expert to the court, Appellant's designation as an SVP, initially made in 2006,

based upon his lifetime condition of pedophilia, could not credibly be challenged at this late date.

The trial court did not abuse its discretion in failing to award Appellant funding to secure an independent SVP evaluation.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/25/2025