**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John Earl DOMMEL, Appellee.**

Superior Court of Pennsylvania.

Argued March 16, 2005.

Filed Sept. 28, 2005.

Reargument Denied Dec. 2, 2005.

Alina L. Andreoli, Asst. Dist. Atty., Lancaster, for Com., appellant.

MaryJean Glick, Lancaster, for appellee.

BEFORE: STEVENS, BOWES, and McCAFFERY, JJ.

OPINION BY STEVENS, J.:

¶ 1 The Commonwealth appeals from the order of the Court of Common Pleas of Lancaster County granting Appellee/Defendant John Earl Dommel's motion to suppress evidence obtained subsequent to a warrantless entry and arrest occurring in his home.[1] Dommel's arrest stemmed from an alleged hit and run incident, for which he was charged with two counts of DUI, accidents involving damage to attended vehicle or property, and the summary offenses of drivers required to be licensed and traffic control signals.

¶ 2 Herein, the Commonwealth argues that the police officer's warrantless entry was justifiable because it occurred during hot pursuit, was reasonable to prevent escape, and was supported by probable cause. Dommel contends that the suppression court's ruling should be upheld not only for the reasons stated by the court, but also because the officer was

---

1. Pursuant to Pa.R.A.P. 311(d), the Commonwealth certifies in good faith that the lower court's order to suppress substantially terminates the prosecution of this case

without legal authority to make a warrantless arrest on a misdemeanor offense occurring outside his presence. We reverse and remand for further proceedings.

 ¶ 3 When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *Commonwealth v. Chernosky*, 874 A.2d 123, 125 (Pa.Super.2005) (*en banc*). The suppression court's findings of fact bind us if the record supports those findings. *Id.* The suppression court's conclusions of law, however, are not binding on this Court, whose duty is to determine if the suppression court properly applied the law to the facts. *Id.*

¶ 4 At the suppression hearing, the Commonwealth presented the following uncontradicted testimony: On October 23, 2003 at about 10:20 p.m., Dommel was driving his pick up truck on East Towne Mall highway when his truck stopped halfway at the intersection of East Towne Mall and Route 462 despite having a green light. N.T. 9/7/04 at 4. Kevin Witman, whose Acura Integra was stopped at a red light on Route 462 at the same intersection, proceeded when the intersection lights had changed, only to be broadsided by Dommel's pickup truck, which had traveled through a red light despite moments earlier having stopped for the light. N.T. at 5–6. Witman's Acura spun 180 degrees before he corrected its course just short of hitting a curb, at which time he saw Dommel's pick up truck leaving the scene. N.T. at 6. Witman quickly assessed that his car was sufficiently operable [2] to follow Dommel, and he placed an emergency call to "911" as he set off. N.T. at 7.

¶ 5 Witman gave the 911 dispatcher a continuing report of Dommel's location and manner of driving, which included Dommel's driving through four more red lights before turning onto a residential street and pulling up into a residential driveway. N.T. at 9. Responding officers *en route* to intercept Dommel received Witman's report through the dispatcher, and they arrived at the residence some 15 to 30 seconds after Dommel had stopped his pick up truck. N.T. at 9–10, 16.

¶ 6 Officer Bryan Kondras of the East Lampeter Township Police Department was first to arrive at the residence. With overhead emergency lights flashing, Officer Kondras saw both the pickup truck and a baseball cap-wearing white male operator, Dommel, fitting descriptions given to him over the radio. N.T. 17–18. Two other officers arrived shortly thereafter. Officer Kondras saw that Dommel had parked the pickup behind the residence, an area that is "kind of open[,] ... lead[ing] down into an open field—or open yards, rather." N.T. at 18.

¶ 7 Dommel had already walked about fifteen feet from his pick up truck—thirty feet from the officer—and so Officer Kondras twice shouted an order for Dommel to stop where he was because the officer needed to talk to him. N.T. at 18. Dommel continued to walk towards the home despite nearby flashing lights and police commands to stop, which, Officer Kondras believed, Dommel saw and heard. N.T. at 28. Officer Kondras testified that he tried unsuccessfully to intercept Dommel before Dommel entered the home. N.T. at 20.

¶ 8 Dommel walked into the home leaving the door standing fully open behind him, and Officer Kondras ran in pursuit

---

**2.** Witman later made a full assessment of damage, which included a bent rear wheel

and heavily damaged side corner panel. N.T. at 12.

immediately afterward. N.T. at 21, 30. The officer entered the home without knocking or announcing, and without verbal consent. He raced through the kitchen and encountered Dommel sitting on a sofa next to his girlfriend. N.T. at 21, 22, 31. Officer Kondras placed Dommel under arrest. N.T. at 23. It was confirmed later that the house was, in fact, Dommel's residence.

¶ 9 At the close of the Commonwealth's evidence and closing arguments (not transcribed), the suppression court ruled that, without exigent circumstances to accompany probable cause to enter Dommel's home, the officer had violated Dommel's Fourth Amendment right against warrantless search and seizure. Accordingly, the court suppressed all evidence obtained through Dommel's arrest. The Commonwealth's timely appeal followed.

█ ¶ 10 This appeal initially presented the single question of whether an exigency existed to justify the warrantless entry into Dommel's home. On Dommel's motion, however, we granted reargument and now also consider the preliminary question of whether Officer Kondras possessed authority to execute a warrantless arrest for a misdemeanor offense committed outside of his presence. Such arrest authority is crucial to the present case, for it is a necessary condition to the validity of the officer's subsequent warrantless entry into Dommel's home. On this preliminary question, we find that Pa.R.Crim.P. 502 and former 75 Pa.C.S. § 3731(c),[3] read in conjunction, furnished Officer Kondras with authority to arrest Dommel on probable cause of misdemeanor DUI occurring outside the officer's presence.

¶ 11 Pennsylvania Rule of Criminal Procedure 502[4] provides in part that police may institute a criminal proceeding by "an arrest without a warrant upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, **when such arrest without a warrant is specifically authorized by statute.**" Pa.R.Crim.P. 502(2)(c) (emphasis added). At the time of Dommel's arrest, Section 3731(c) of the Vehicle Code, entitled "Certain arrests authorized," specifically authorized an officer to arrest without a warrant upon probable cause to believe that an individual has violated the DUI statute outside the officer's presence.[5]

---

3. Section 3731(c), which was still in effect at the time of Dommel's arrest, has since been replaced by Section 3811(a) of Title 75, effective February 1, 2004.

4. Rule 502 provides:
 Criminal proceedings in court cases shall be instituted by:
 (1) filing a written complaint; or
 (2) an arrest without a warrant:
 (a) when the offense is a felony or misdemeanor committed in the presence of the police officer making the arrest; or
 (b) upon probable cause when the offense is a felony; or
 (c) upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute.

5. At the time of Dommel's arrest, Section 75 Pa.C.S. § 3731(c)[5] provided:
 (c) **Certain arrests authorized.**—In addition to any other powers of arrest, a police officer is hereby authorized to arrest without a warrant any person who the officer has probable cause to believe has violated the provisions of this section, regardless of whether the alleged violation was committed in the presence of such officer. This authority to arrest extends to any hospital or other medical treatment facility located beyond the territorial limits of the police officer's political subdivision at which the person to be arrested is found or was taken or removed to for purposes of emergency treatment examination or evaluation provided there is probable cause to believe that the violation of this

██ ¶ 12 Thus, we examine whether probable cause to believe Dommel drove under the influence existed prior to Officer Kondras' warrantless entry into Dommel's home. Dommel argues that probable cause of DUI was lacking, as the only crimes for which there was probable cause at that moment were summary traffic offenses and the misdemeanor "accidents involving attended vehicle or property." We disagree.

██ ¶ 13 "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *In re C.C.J.*, 799 A.2d 116, 121 (Pa.Super.2002) (quoting *Commonwealth v. Gwynn*, 555 Pa. 86, 98, 723 A.2d 143, 148 (1998)). "Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances.'" *Id.* (quoting *Commonwealth v. Myers*, 728 A.2d 960, 962 (Pa.Super.1999)).

██ ¶ 14 "[P]robable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'" *Commonwealth v. Wright*, 867 A.2d 1265, 1268 (Pa.Super.2005) (quoting *Commonwealth v. Romero*, 449 Pa.Super. 194, 673 A.2d 374, 376 (1996)). "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." *Commonwealth v. Monaghan*, 295 Pa.Super. 450, 441 A.2d 1318 (1982) (citation omitted). *See also Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that probable cause means "a fair probability that

contraband or evidence of a crime will be found."); *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa.Super.2004) (reciting that probable cause exists when criminality is one reasonable inference, not necessarily even the most likely inference). To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [ ]probable-cause[ ] decision." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (citations omitted).

¶ 15 Prior to entering Dommel's home, Officer Kondras had received an identified victim's continuing report that Dommel broadsided the victim's moving vehicle without stopping, drove through four more red lights at moderate speed, and eventually parked his pickup truck partially behind a residence in an apparent attempt to hide the truck from view. When Officer Kondras arrived at the residence, he saw the victim's damaged vehicle, thus verifying the basis for the report. At that moment, possessing highly reliable evidence that Dommel ran a red light and caused an intersectional collision, made a somewhat lethargic attempt to flee the scene, and maintained that middling speed while driving through four more red lights, Officer Kondras had probable cause to stop Dommel for several motor vehicle code violations, including DUI. *See Commonwealth v. Chernosky*, 874 A.2d 123, 128 (Pa.Super.2005) (finding probable cause to believe driver was DUI from off-duty police officer's five minute observation of driver continually driving onto berm and on two occasions crossing into the oncoming lane

section occurred within the police officer's political subdivision.

75 Pa.C.S.A. § 3731(c).

of travel, creating a clear risk to oncoming traffic).

¶ 16 What solidified probable cause to arrest for DUI, however, was Dommel's practically trance-like reaction in the face of a highly demonstrative show of authority in his front yard. Confronted with a prominent display of patrol car strobe lights, overhead flashers, and an officer's repeated calls to stop where he was, Dommel neither stopped nor ran away; instead, he just continued to walk into his home and left the door standing wide open behind him. This abnormally insensible reaction to what most would consider an intimidating official presence in their yard, coupled with the officer's knowledge of Dommel's hazardous driving and slow-paced flight, supplied a fair probability that Dommel was too chemically impaired to appreciate his surroundings or exercise sound judgment. Under the totality of the circumstances, therefore, an officer exercising reasonable caution would have had probable cause to believe that Dommel had been driving under the influence of drugs or alcohol. *Compare Commonwealth v. Danforth*, 395 Pa.Super. 1, 576 A.2d 1013 (1990) (evidence of single-car accident killing passenger insufficient to establish probable cause of DUI necessary to administer BAC test where other evidence included officer's express testimony that he did not suspect intoxication or notice any signs of intoxication during interview, and driver herself had phoned police and offered a legitimate explanation for losing control of her car).

¶ 17 Accordingly, we make the initial determination that Officer Kondras had the statutory authority to conduct a warrantless arrest for misdemeanor DUI occurring outside his presence. The remaining question that must be answered is whether Officer Kondras was thus permitted to enter Dommel's home to effectuate that arrest based on the existence of exigent circumstances.

■ ¶ 18 In its Pa.R.A.P. 1925(a) opinion, the suppression court denied the existence of enabling exigencies by balancing established competing interests, namely, the Commonwealth's interest in law enforcement against the fact that Dommel's offense was a non-violent, third-degree misdemeanor, that there was no reason to believe Dommel was armed, that this was not a case in which incriminating evidence could be destroyed, and that the home could have easily been secured pending receipt of either permission from Dommel or a warrant from a judicial officer. The Commonwealth argues to the contrary that there existed a hot pursuit justification for Officer Kondras' home entry, as Dommel himself initiated a lawful pursuit and then brought it indoors. The Commonwealth charges the suppression court with employing "a technical analysis contrary to common-sense and ignoring the practical considerations confronting the arresting officer." Brief for Appellant at 11.

¶ 19 The suppression court invalidated the warrantless entry here based on two decisions—*Commonwealth v. Demshock*, 854 A.2d 553, (Pa.Super.2004), and *Commonwealth v. Roland*, 535 Pa. 595, 637 A.2d 269 (1994). In *Roland*, the Pennsylvania Supreme Court sets forth numerous Fourth Amendment principles and considerations governing warrantless intrusions into the home:

> In a private home, searches and seizures without a warrant are presumptively unreasonable. Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment. In determining whether exigent circumstances exist, a number of factors are to be considered[:]

the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was made peaceably, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Where an offense being investigated is a minor one, a balancing of the foregoing factors should be weighted against finding that exigent circumstances exist.... It is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.

*Roland*, 535 Pa. at 599–600, 637 A.2d at 270–271 (quotations and citations omitted). Such constitutional protections, moreover, have been held to apply even where officers encountered an open front door and an unlocked screen door on a warm summer evening. *See Commonwealth v. Crompton*, 545 Pa. 586, 591, 682 A.2d 286, 288 (1996) ("It is the nature of the premises, not the door to the premises, that triggers the protections of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the U.S. Constitution.").

¶ 20 While such overarching principles clearly apply to the case at bar, we note that the facts involved in both *Roland* and *Demshock* are inapposite to the facts of the present case. Specifically, both *Roland* and *Demshock* involved warrantless intrusions upon occupants who had been in their homes at all times, and whose first encounter with police occurred upon opening their front doors in response to a simple knock. In each case, officers entered and conducted searches upon seeing, from the doorway, marijuana (*Demshock*) and underage possession of beer (*Roland*). In neither case were meaningful exigent circumstances established. *See Roland* (finding that "[b]eer cans are not, however, a type of evidence that can easily be destroyed by flushing them down a drain or burning them," and that the minors would have easily been apprehended for underage consumption if they attempted to leave the house prior to officers obtaining a warrant).

¶ 21 In contrast, several of the above enumerated factors vital to establishing exigency existed here: above and beyond a clear showing of probable cause; a strong reason to believe that the suspect is within the premises being entered; a likelihood that the suspect will escape if not swiftly apprehended; a peaceable entry which, though made at nighttime, occurred in a very public display of police lights before a witnessing complainant and without surprise to the homeowner; and, perhaps most important, the likelihood that BAC evidence crucial to a DUI charge permitting warrantless arrest in the first place would be lost in the time it would take the officer to secure a warrant.

¶ 22 Moreover, though not charged with offenses categorized as violent, Dommel's actions indicated either a callous disregard

of, or the inability to regard at all, both the violent automobile collision which he caused and subsequent official commands to stop. Officer Kondras thus did not enter the home of beer drinking minors or marijuana smokers, but of a hit and run/DUI suspect who, for whichever reason, had shown no concern for his victim's well-being and was now eluding police. Though neither wanted for a felony nor believed to be armed, there was nevertheless reason under these facts to consider Dommel either chemically impaired or highly unpredictable and perhaps dangerous. Dommel's actions thus warranted immediate pursuit.

¶ 23 Finally, we find that any expectation of privacy Dommel had in his home under such circumstances was unreasonable, as he is held to have known that it was he who directed a police pursuit from outside his home to inside his home. *See Commonwealth v. Govens*, 429 Pa.Super. 464, 632 A.2d 1316 (1993) (citing *United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) and its rationale "that police had been in 'hot pursuit' when they followed the suspect into her home. The Court observed that 'a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper...by the expedient of escaping into a private place.' ")

¶ 24 Given the totality of such circumstances, we find Officer Kondras's warrantless entry into Dommel's house supported by both probable cause and exigent circumstances. Accordingly, we reverse the suppression order entered below, and remand for further proceedings.

¶ 25 Order reversed. Remanded for further proceedings consistent with this decision. Jurisdiction relinquished.