J-A15004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHEED WOODS, | |
| Appellant | No. 1340 EDA 2018 |

Appeal from the Judgment of Sentence Entered March 27, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0006139-2016

BEFORE:  BENDER, P.J.E., GANTMAN, P.J.E., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:              **FILED AUGUST 30, 2019**

Appellant, Rasheed Woods, appeals from the judgment of sentence of an aggregate term of four to eight years' incarceration, followed by five years' probation, imposed after a jury convicted him of possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30), and conspiracy to commit PWID, 18 Pa.C.S. § 903.  On appeal, Appellant solely challenges the trial court's denial of his pretrial motion to suppress.  After careful review, we affirm.

Appellant was arrested and charged with the above-stated offenses after undercover officers observed him and his co-defendant, Kaleke Burrell,[1] engage in a sale of narcotics to an unidentified, white male on July 21, 2016.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Burrell has also filed an appeal with this Court, which is docketed at 1432 EDA 2018.

Appellant and Burrell were arrested shortly after the sale, and found to be in possession of large quantities of crack cocaine and U.S. currency.

Prior to trial, both Appellant and Burrell filed motions to suppress the evidence recovered following their warrantless arrests, arguing that police lacked probable cause. A suppression hearing was conducted on April 20, 2017. There, Officer Anthony Salvatore of the Darby Borough Police Department testified. N.T. Suppression Hearing, 4/20/17, at 4. Officer Salvatore explained that in February of 2016, he received information from Andrew Heffer, a then-confidential informant,[2] that Appellant "was the leader of a drug trafficking organization selling heroin and crack through southwest Philadelphia and Delaware County." *Id.* at 6. The officer investigated Heffer's claims by checking police reports and speaking with Sergeant Mike Davis of the 12th District in Philadelphia. *Id.* That investigation showed that Appellant "had been arrested numerous times for drug trafficking [and] firearm violations." *Id.* at 7. Officer Salvatore deemed Heffer's tip about Appellant reliable, and set up a controlled purchase of drugs between Heffer and Appellant. *Id.* During the controlled buy, Appellant sold Heffer cocaine. *Id.*

---

[2] Officer Salvatore testified that Heffer's identity was subsequently revealed, *id.* at 6, and that after the controlled buy from Appellant, Heffer was "deactivated" as an informant because he began "getting high and getting drugs from other sources[,]" *id.* at 21, 23.

at 9.  Over the ensuing months, Officer Salvatore and other officers "kept continuous[,] non-routine surveillance on [Appellant]."  *Id.* at 9-10.[3]

In March of 2016, an individual named Brian Burnett-McCullough contacted Officer Salvatore, claiming that Appellant "was the leader of a drug trafficking organization" that "controlled the area of 72nd and 73rd Street[s] in Southwest Philadelphia."  *Id.* at 10.  Officer Salvatore again spoke to Sergeant Davis, who confirmed that he had received "the same information" from other sources.  *Id.* at 11.  Officer Salvatore also discovered that Appellant had been arrested by Cherry Hill Police in New Jersey after a search of an apartment, in which Appellant was present and mail addressed to him was found, had uncovered "about a kilo of cocaine…."  *Id.* at 12.

On July 21, 2016, Officer Salvatore received information that Appellant was going to be making a narcotics transaction in the area of Andrews Avenue and Bluntston Avenue in Collingdale, Pennsylvania.  *Id.* at 12-13.  Officer Salvatore set up surveillance at that location, and observed Appellant arrive in the area around 2:00 p.m., driving a silver Toyota Scion with non-tinted windows.  *Id.* at 13.  Using binoculars, Officer Salvatore could see that another man, later identified as co-defendant Kaleke Burrell, was a passenger in the

---

[3] Officer Salvatore explained that by "non-routine surveillance," he meant that officers would conduct surveillance of Appellant "at least once a week and if [officers were] able to do more than one day a week[,] then more than one day a week [was] done."  *Id.* at 25.  However, no surveillance logs or other documentation was turned over to the Delaware County District Attorney's Office, and nothing of "evidentiary value" was observed during the five months of surveillance between the controlled buy and the incidents surrounding Appellant's arrest on July 21, 2016, discussed *infra*.  *Id.* at 24-25.

car. *Id.* at 13, 14. The vehicle turned into a driveway and "[a] female came out of the house, walked over to the driver side of the silver Scion[,] [l]eaned into the driver side window[,] [w]as there for approximately 30 seconds, and then walked right back into the house." *Id.* at 13-14.

Appellant then drove the vehicle out of the driveway and proceeded to Andrews Avenue and Blunston Avenue, where the car "pulled over again and met with a white male." *Id.* at 14. The man handed U.S. currency "into the passenger window…." *Id.* at 16. "The white male then received something small and white in return and put it in his pocket, turned around and walked right back across the street and into a house." *Id.* at 14. On re-direct examination, Officer Salvatore further described the item received by the white male as a small, clear, Ziploc bag that contained a white substance, which the officer believed was crack cocaine, based on his experience of seeing "cocaine numerous times" and conducting "hundreds of arrests involving crack cocaine." *Id.* at 30-31.

After the man went back into the house, the vehicle driven by Appellant "pulled off" and was stopped shortly thereafter by Lieutenant Richard Gibney. *Id.* at 34. Lieutenant Gibney testified that Appellant's vehicle was pulled over and blocked in by several police cars. *Id.* The officers exited their vehicles with their guns drawn and ordered Appellant and Burrell to show their hands. *Id.* Lieutenant Gibney testified that Appellant and Burrell were "jumping all over the car, they were reaching into their waistbands, they were reaching all over … the car." *Id.* Ultimately, the men were removed from the vehicle and

detained, after which they were transported to the police station. *Id.* at 35, 37. During a subsequent search of the vehicle, officers recovered "13 knotted sandwich bags containing a large amount of [a] hard white chunky substance." *Id.* at 17. Additionally, in Appellant's possession, officers found $2,110 in U.S. currency, as well as a large bag holding "37 small[,] clear plastic bags containing a hard[,] white[, and] chunky substance and … one loose[,] clear bag containing a hard[,] white[, and] chunky substance." *Id.* Burrell possessed "two knotted sandwich bags with a hard[,] white[, and] chunky substance" and $52 in U.S. currency. *Id.* at 17, 18. The substance was later determined to be crack cocaine.

Based on this evidence, the court denied Appellant's and Burrell's motions to suppress. Their cases proceeded to a jury trial in January of 2018, at the close of which both men were convicted of PWID and conspiracy to commit PWID. On April 10, 2018, Appellant was sentenced to the aggregate term of incarceration and probation stated *supra*. He filed a timely post-sentence motion that was denied. He then filed a timely notice of appeal, and he also complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant raises the following issue for our review:

> 1. Police officers arrested and searched a driver after witnessing his passenger exchange a white substance in a plastic bag for an unspecified amount of cash on a single occasion. Should the trial court have suppressed evidence recovered incident to the driver's arrest because police lacked probable cause?

Appellant's Brief at 2.

- 5 -

Our standard of review of Appellant's issue is well-settled:

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1287 (Pa. Super. 2010) (*en banc*)

(citation omitted).

Preliminarily, Appellant notes that,

[t]he Commonwealth has not disputed [that] probable cause is the governing standard, nor does [Appellant] believe it would now do so on appeal.[4] To summarize that conclusion briefly, however, police detained [Appellant] by forcefully stopping his car at gunpoint, demanding that he put his hands up, dragging him out of his car and taking him to the police station, all without a warrant. These actions are an arrest, for which probable cause is necessary. *See generally Com[monwealth] v. White*, 669 A.2d 896, 901 (Pa. 1995) (quoting *Com[monwealth] v. Rodriquez*, 614 A.2d 1378, 1384 (Pa. 1992) (defining an arrest as "any act that indicates an intention to take a person into custody and that subjects him to the actual control and will of the person making the arrest")[)][].

Appellant's Brief at 7 n.1.

___

[4] In its brief, the Commonwealth addresses Appellant's arguments under both the reasonable suspicion and probable cause standards, making no explicit distinction regarding which standard should apply. Notably, however, at the suppression hearing, the Commonwealth argued only that probable cause supported the warrantless arrest and search of Appellant and Burrell. *See* N.T. Suppression Hearing at 45-47.

We need not definitively determine whether Appellant and Burrell were simply detained, or effectively arrested, when their vehicle was stopped by police because, even under the more imposing, probable-cause standard, we deem the conduct of the police officers lawful. Our Court has explained that:

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.
>
> Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. [P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision.

***Commonwealth v. Dommel***, 885 A.2d 998, 1002 (Pa. Super. 2005) (cleaned up).

In this case, Appellant first contends that in assessing whether Officer Salvatore had probable cause to conduct his warrantless arrest, we may consider only the "single incident" that occurred on July 21, 2016. Appellant's Brief at 8. He insists that the officer's prior "investigation into [him] does not matter to the probable cause determination." ***Id.*** Notably, Appellant cites no legal authority to support this argument. We deem it meritless. As explained above, we must consider the totality of the facts and circumstances known to

the officer at the time of the warrantless arrest when assessing whether the officer had probable cause. **See Dommel, supra**. Here, the totality of the circumstances known by Officer Salvatore includes the information he learned during his investigation and surveillance of Appellant during the five months prior to Appellant's July 21, 2016 arrest.

Moreover, we also reject Appellant's argument that the tip Officer Salvatore received, that Appellant would be selling drugs at a specific location on July 21, 2016, "is entitled to no independent evidentiary weight." Appellant's Brief at 9. While Appellant claims that Officer Salvatore did no "investigative work to corroborate" the tip, that is patently false. **Id.** Officer Salvatore set up surveillance at the location and observed Appellant arrive in the area on the date specified. He further watched as Appellant parked at a home from which a woman emerged, briefly went to the driver's side window of Appellant's vehicle, and then went back inside the residence. Appellant then travelled to another house, from which the white male emerged and approached the car, handed cash into the car through the passenger window, received in exchange a small bag containing a white substance, and then quickly entered a nearby residence. Officer Salvatore's observations of all of this constituted his investigation into, and verification of, the reliability of the tip that Appellant was selling drugs at that location.

Finally, we also find meritless Appellant's argument that "Officer Salvatore offered essentially no explanation of why he believed that [Appellant's] passenger was selling drugs other than to assert that he has a

great deal of experience with drug cases...." *Id.* at 10. As explained above, in addition to his observations on July 21, 2016, Officer Salvatore had received a tip that Appellant planned to sell drugs on that date and at that location; he had previously witnessed Appellant sell drugs to Heffer; and he had received information from other police departments about Appellant's drug activity, including that Appellant had been arrested in a residence where a large amount of cocaine was subsequently found. With this knowledge as a backdrop, Officer Salvatore arrived at the location of the alleged drug deal on July 21, 2016, and observed two individuals approach, and then quickly leave, Appellant's vehicle. The second person — the white male — exchanged currency with someone in the car and received in exchange a small, clear bag containing a white, chunky substance. Thus, Officer Salvatore's probable cause to arrest Appellant was premised on the totality of these facts, not simply his training and experience.

Moreover, contrary to Appellant's argument, Officer Salvatore clearly explained how his training and experience led him to conclude that the white substance was crack cocaine. Specifically, Officer Salvatore testified at the suppression hearing that he has been a patrolman for over 13 years. N.T. Suppression Hearing at 5. During that time, he had "worked narcotics and then [been] assigned to the DEA Narcotics Task Force," in which he was then in his third year. *Id.* He attended "DEA Narcotics Investigation School[,]" as well as "numerous narcotics conferences involving different trainings." *Id.* When pressed to explain why he believed that the white, chunky substance

- 9 -

he observed in the small bag given to the white male was crack cocaine, the officer testified that he has "seen crack cocaine numerous times" and he has "had hundreds of arrests involving crack cocaine." *Id.* at 30.

This testimony makes the present case easily distinguishable from the two decisions on which Appellant relies: *Commonwealth v. Randolph*, 151 A.3d 170 (Pa. Super. 2016), and *Commonwealth v. Whitlock*, 69 A.3d 635 (Pa. Super. 2013). In *Randolph*, we held that there was no probable cause to issue a search warrant for a box welded to the undercarriage of Randolph's car where the officer submitting the warrant application stated the following facts therein about his stop of Randolph's car:

> I ... initiated a canine search of the vehicle with [c]anine 'Draco'. During the search, Draco increased his breathing around the driver's seat floor area, but did not indicate. I then initiated a hand search of the vehicle with Tpr. Rowland. During the search, we located multiple cell phones[,] one of which was ringing, [but] no luggage to indicate a long trip. I then looked at the undercarriage of the vehicle and observed an aftermarket modification between the floor (*sic*) that did not match the remainder of the undercarriage. Based on my training and experience[,] I recognized this modification to be a hidden compartment commonly used to transport guns, drugs and U.S. currency. I related this information to Randolph and noticed a drastic change in attitude...[.] Canine Draco is trained and certified by the Pennsylvania State Police to detect the odors of cocaine, heroin, marijuana and methamphetamines.

*Randolph*, 151 A.3d at 183 (citation to record omitted). We deemed these facts insufficient to demonstrate probable cause to issue the search warrant for two reasons:

> First, the police dog, Draco, did not alert when it sniffed the area in which Corporal Hanlon subsequently discovered the

compartment. … Second, Corporal Hanlon failed to explain how his "training and experience" led him to recognize that the compartment was "commonly used to transport guns, drugs and U.S. currency." He neglected to list what classes he has attended or certifications he has received on this subject, the number or type of cases he has participated in where officers discovered hidden compartments containing drugs or weapons, or even how long he has been a law enforcement officer. Thus, his claim of "knowledge and experience" was an empty phrase that failed to tilt the scales toward probable cause.

*Id.* at 184.

Unlike in **Randolph**, Officer Salvatore premised his probable cause determination on much more than his training and experience, but he also explained how his training and experience applied to the circumstances at hand and led him to conclude that he had witnessed a drug sale of crack cocaine from Appellant and Burrell to the white male. Thus, **Randolph** is distinguishable from this case.

We also find Appellant's reliance on **Whitlock** unconvincing. There, we held that no probable cause existed where "the Commonwealth's assertions in support of probable cause consist[ed] of no more than [a police officer's] testimony that he was an experienced narcotics investigator and that he observed [Whitlock] withdrawing a newspaper-wrapped package from his pocket and depositing it in a bucket on his own porch, which triggered his suspicion that the package contained heroin." **Whitlock**, 69 A.3d at 641. Clearly, these facts and the question addressed by the **Whitlock** panel — *i.e.*, whether "the Commonwealth established that the incriminating nature of the

object was immediately apparent under the totality of the circumstances" — are not analogous to the present case.

In sum, Appellant has not convinced us that the trial court erred in denying his motion to suppress. Officer Salvatore testified that Appellant's arrest was premised on: the information he gleaned during his months-long investigation of Appellant, including the controlled purchase of drugs from Appellant by Heffer; the tip that Appellant would be selling drugs at a specific location on July 21, 2016; the officer's observation, at that location, of a female approaching Appellant's car and quickly returning to her home; and the officer's seeing the white male hand cash through the window on Burrell's side of the vehicle, and receive in exchange a small, clear bag containing a white, chunky substance that, due to the officer's training and experience, he believed to be crack cocaine. Based on the totality of these facts and circumstances, Officer Salvatore had probable cause to order the warrantless arrest of Appellant.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/19

- 12 -