J-A15005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KALEKE M. BURRELL, | |
| Appellant | No. 1432 EDA 2018 |

Appeal from the Judgment of Sentence Entered April 10, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006144-2016

BEFORE: BENDER, P.J.E., GANTMAN, P.J.E., and COLINS, J.*

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 30, 2019**

Appellant, Kaleke M. Burrell, appeals from the judgment of sentence of an aggregate term of four to eight years' incarceration, followed by five years' probation, imposed after a jury convicted him of possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30), and conspiracy to commit PWID, 18 Pa.C.S. § 903. On appeal, Appellant challenges the trial court's denial of his pretrial motion to suppress, as well as the sufficiency of the evidence to sustain his convictions. After careful review, we affirm.

Appellant was arrested and charged with the above-stated offenses after undercover officers observed him and his co-defendant, Rasheed Woods,[1]

---

* Retired Senior Judge assigned to the Superior Court.

[1] Woods has also filed an appeal with this Court, which is docketed at 1340 EDA 2018.

engage in a sale of narcotics to an unidentified, white male on July 21, 2016. Appellant and Woods were arrested shortly after the sale, and found to be in possession of large quantities of crack cocaine and U.S. currency.

Prior to trial, both Appellant and Woods filed motions to suppress the evidence recovered following their warrantless arrests, arguing that police lacked probable cause. A suppression hearing was conducted on April 20, 2017. There, Officer Anthony Salvatore of the Darby Borough Police Department testified. N.T. Suppression Hearing, 4/20/17, at 4. Officer Salvatore explained that in February of 2016, he received information from Andrew Heffer, a then-confidential informant,[2] that Woods "was the leader of a drug trafficking organization selling heroin and crack through southwest Philadelphia and Delaware County." *Id.* at 6. The officer investigated Heffer's claims by checking police reports and speaking with Sergeant Mike Davis of the 12th District in Philadelphia. *Id.* That investigation showed that Woods "had been arrested numerous times for drug trafficking [and] firearm violations." *Id.* at 7. Officer Salvatore deemed Heffer's tip about Woods reliable, and set up a controlled purchase of drugs between Heffer and Woods. *Id.* During the controlled buy, Woods sold Heffer cocaine. *Id.* at 9. Over the

_____

[2] Officer Salvatore testified that Heffer's identity was subsequently revealed, *id.* at 6, and that after the controlled buy from Woods, Heffer was "deactivated" as an informant because he began "getting high and getting drugs from other sources[,]" *id.* at 21, 23.

ensuing months, Officer Salvatore and other officers "kept continuous[,] non-routine surveillance on [] Woods." *Id.* at 9-10.[3]

In March of 2016, an individual named Brian Burnett-McCullough contacted Officer Salvatore, claiming that Woods "was the leader of a drug trafficking organization" that "controlled the area of 72nd and 73rd Street[s] in Southwest Philadelphia." *Id.* at 10. Officer Salvatore again spoke to Sergeant Davis, who confirmed that he had received "the same information." *Id.* at 11. Officer Salvatore also discovered that Woods had been arrested by Cherry Hill Police in New Jersey after police searched an apartment, in which Woods was present and mail addressed to him was found, and uncovered "about a kilo of cocaine…." *Id.* at 12.

On July 21, 2016, Officer Salvatore received information that Woods was going to be making a narcotics transaction in the area of Andrews Avenue and Blunston Avenue in Collingdale, Pennsylvania. *Id.* at 12-13. Officer Salvatore set up surveillance at that location, and observed Woods arrive in the area around 2:00 p.m., driving a silver Toyota Scion with non-tinted windows. *Id.* at 13. Using binoculars, Officer Salvatore could see that another man, later identified as Appellant, was a passenger in the car. *Id.* at 13, 14.

---

[3] Officer Salvatore explained that by "non-routine surveillance," he meant that officers would conduct surveillance of Woods "at least once a week and if [officers were] able to do more than one day a week[,] then more than one day a week [was] done." *Id.* at 25. However, no surveillance logs or other documentation was turned over to the Delaware County District Attorney's Office, and nothing of "evidentiary value" was observed during the five months of surveillance between the controlled buy and the incidents surrounding Woods' arrest on July 21, 2016, discussed *infra*. *Id.* at 24-25.

The vehicle turned into a driveway and "[a] female came out of the house, walked over to the driver side of the silver Scion[,] [l]eaned into the driver side window[,] [w]as there for approximately 30 seconds, and then walked right back into the house." *Id.* at 13-14.

Woods then drove the vehicle out of the driveway and proceeded to Andrews Avenue and Blunston Avenue, where the car "pulled over again and met with a white male." *Id.* at 14. The man handed U.S. currency "into the passenger window…." *Id.* at 16. "The white male then received something small and white in return and put it in his pocket, turned around and walked right back across the street and into a house." *Id.* at 14. On re-direct examination, Officer Salvatore further described the item received by the white male as a small, clear, Ziploc bag that contained a white substance, which the officer believed was crack cocaine, based on his experience of seeing "cocaine numerous times" and conducting "hundreds of arrests involving crack cocaine." *Id.* at 30-31.

After the man went back into the house, the vehicle driven by Woods "pulled off" and was stopped shortly thereafter by Lieutenant Richard Gibney. *Id.* at 34. Lieutenant Gibney testified that Woods' vehicle was pulled over and blocked in by several police cars. *Id.* The officers exited their vehicles with their guns drawn and ordered Appellant and Woods to show their hands. *Id.* Lieutenant Gibney testified that Woods and Appellant were "jumping all over the car, they were reaching into their waistbands, they were reaching all over … the car." *Id.* Ultimately, the men were removed from the vehicle and

detained, after which they were transported to the police station. *Id.* at 35, 37. During a subsequent search of the vehicle, officers recovered "13 knotted sandwich bags containing a large amount of [a] hard white chunky substance." *Id.* at 17. Additionally, in Woods' possession, officers found $2,110 in U.S. currency, as well as a large bag holding "37 small[,] clear plastic bags containing a hard[,] white[, and] chunky substance and … one loose[,] clear bag containing a hard[,] white[, and] chunky substance." *Id.* Appellant possessed "two knotted sandwich bags with a hard[,] white[, and] chunky substance" and $52 in U.S. currency. *Id.* at 17, 18. The substance was later determined to be crack cocaine.

Based on this evidence, the court denied Appellant's and Woods' motions to suppress. Their cases proceeded to a jury trial in January of 2018, at the close of which both men were convicted of PWID and conspiracy to commit PWID. On April 10, 2018, Appellant was sentenced to the aggregate term of incarceration and probation stated *supra*. He filed a timely notice of appeal, and he also complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant raises the following issue for our review:

> A. Did the [t]rial [c]ourt commit an error of law when it failed to grant Appellant's [m]otion to [s]uppress, where the officers lacked reasonable suspicion to detain and probable cause to arrest Appellant for the crimes charged?
>
> B. Was the evidence insufficient as a matter of law to convict Appellant of [c]onspiracy to commit [PWID] … with Woods?

Appellant's Brief at 5.

Our standard of review of Appellant's first issue is well-settled:

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

***Commonwealth v. Feczko***, 10 A.3d 1285, 1287 (Pa. Super. 2010) (*en banc*) (citation omitted).

Preliminarily, Appellant avers that the police conducted an investigative detention when they stopped Woods' vehicle and, thus, they were required to possess reasonable suspicion to validate that detention. The Commonwealth addresses Appellant's arguments under both the reasonable suspicion and probable cause standards, making no explicit distinction regarding which standard should apply. Notably, however, at the suppression hearing, the Commonwealth argued only that probable cause supported the warrantless arrest and search of Appellant and Burrell. ***See*** N.T. Suppression Hearing at 45-47.

We need not definitively determine whether Appellant and Woods were simply detained, or effectively arrested, when their vehicle was stopped by police because, even under the more imposing, probable-cause standard, we deem the conduct of the police officers lawful. Our Court has explained that:

Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.

Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. [P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision.

***Commonwealth v. Dommel***, 885 A.2d 998, 1002 (Pa. Super. 2005) (cleaned up).

In this case, Appellant argues that Officer Salvatore's prior investigation into Woods did not reveal anything connecting Appellant to drug activity, and the officer's testimony about the July 21, 2016 drug sale focused exclusively on Woods' conduct. Appellant insists that he "was arrested without a single piece of evidence suggesting that he was involved in criminal activity" and that "[t]he record is completely silent as to any facts to warrant a person of reasonable caution in the belief that [he] had committed any offense." Appellant's Brief at 21. He also argues that Officer Salvatore "never testified as to how his training, knowledge, and experience lead [*sic*] him to believe that [Appellant] was involved in any criminal activity." ***Id.*** at 20.

Appellant's argument is unconvincing. Admittedly, the totality of the circumstances in this case certainly provided Officer Salvatore with stronger probable cause to believe that Woods had committed a crime; however, contrary to Appellant's argument, there were sufficient facts demonstrating probable cause to arrest him, as well. Notably, Officer Salvatore's months-long investigation into Woods provided reliable evidence that Woods was a drug dealer. Officer Salvatore received a tip that Woods would be selling drugs at a specific location on July 21, 2016. When the officer set up surveillance on that date and at that location, he observed Woods and Appellant arrive in a vehicle. After a brief exchange with a woman, the two men traveled to another location close by and a white man approached the passenger side of the vehicle. The man handed money into the vehicle through the passenger window where Appellant was sitting, and received a small bag containing a chunky, white substance, which he placed in his pocket as he walked into a nearby house.

Officer Salvatore explained why, due to his training and experience, he believed that he had observed a drug sale. Specifically, the officer testified at the suppression hearing that he had been a patrolman for over 13 years. N.T. Suppression Hearing at 5. During that time, he had "worked narcotics and then [been] assigned to the DEA Narcotics Task Force," in which he was then in his third year. *Id.* He attended "DEA Narcotics Investigation School[,]" as well as "numerous narcotics conferences involving different trainings." *Id.* When pressed to explain why he believed that the white, chunky substance

he observed in the small bag given to the white male was crack cocaine, the officer testified that he has "seen crack cocaine numerous times" and he has "had hundreds of arrests involving crack cocaine." *Id.* at 30.

In sum, Appellant has not convinced us that the trial court erred in denying his motion to suppress. Officer Salvatore testified that Appellant's arrest was premised on: the information he gleaned during his months-long investigation of Woods, including the controlled purchase of drugs from Woods by Heffer; the tip that Woods would be selling drugs at a specific location on July 21, 2016; the officer's observation, at that location, of a female approaching the car and then quickly returning to her home; and the officer's seeing the white male hand cash through the window on Appellant's side of the vehicle, and receive in exchange a small, clear bag containing a white, chunky substance that, due to the officer's training and experience, he believed to be crack cocaine. Based on the totality of these facts and circumstances, Officer Salvatore had probable cause to order a warrantless arrest of Appellant.

Appellant next contends that the evidence was insufficient to sustain his conviction for conspiracy to commit PWID. To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact

finder. ***Commonwealth v. Hartzell****,* 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

In regard to the crime of criminal conspiracy, we have explained:

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator."

As our Court has further explained with respect to the agreement element of conspiracy:

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

***Commonwealth v. McCall***, 911 A.2d 992, 996-97 (Pa. Super. 2006)

(citations omitted).

- 10 -

Here, Appellant insists that he "was merely present at the scene of a crime, which is[,] without more, insufficient to establish a criminal conspiracy." Appellant's Brief at 28. The record belies Appellant's argument. At trial, Officer Salvatore testified essentially the same as he did at Appellant's suppression hearing regarding Woods' and Appellant's conduct on July 21, 2016, which led him to conclude that he had witnessed a drug sale to the unidentified white male. N.T. Trial, 2/7/18, at 33-39. In particular, the officer stated:

> [Officer Salvatore:] The white male leaned into the passenger side of the vehicle. I did observe [U.S.] currency in this white male's hand as he began to lean into the vehicle. When he took his hand out of the vehicle, he was holding a small object and it was white in color.

*Id.* at 38.

Officer Salvatore also reiterated his testimony about the evidence discovered during the search of the vehicle and Woods' and Appellant's persons. The officer explained that on Woods' side of the car, officers found three cell phones "a clear sandwich bag that contained 13 knotted sandwich bags that all contained a hard white chunky substance that was later identified to be crack cocaine." *Id.* at 40-41. Additionally, during a strip search of Woods at the police station, officers found "a sandwich bag containing 37 small clear glassine bags and 1 additional small clear glassine bag all containing what was later discovered to be crack cocaine in-between the cheeks of [] Woods' buttocks." *Id.* at 44. Appellant was also "found to have a sandwich

bag containing two clear knotted sandwich bags with an amount of crack cocaine inside it." *Id.* at 46. Those bags were recovered from Appellant's underwear. *Id.* at 47. On cross-examination, Officer Salvatore testified that the amount of drugs in Appellant's possession cost approximately $300 to $400 dollars and, in his experience, it was rare for a crack cocaine user to possess that amount of drugs for personal use. *Id.* at 73-74, 75. Woods also possessed $2,110 in U.S. currency, *id.* at 47, and Appellant possessed $52 in U.S. currency, *id.* at 49.

Lieutenant Gibney also offered trial testimony similar to his suppression hearing testimony, stating that when he stopped the car driven by Woods, both Woods and Appellant "were in the car jumping all over the place, reaching around, reaching up, [and] reaching down." *Id.* at 81-82.

We conclude that the totality of this evidence was sufficient to prove that Woods and Appellant conspired to sell crack cocaine. The men were in the car together when it arrived at the location where Officer Salvatore's tipster had said that Woods would be selling drugs. When the white male approached the vehicle, he did so on the passenger side where Appellant was sitting. The man handed cash into the vehicle directly in front of Appellant, and his hand emerged holding a bag containing a white substance that Officer Salvatore believed, in light of his training and experience, to be crack cocaine. In addition, when Lieutenant Gibney stopped Woods' vehicle, both Woods and Appellant were seen 'jumping' and reaching around inside the vehicle. The subsequent search of the vehicle revealed large quantities of crack cocaine,

and both Appellant and Woods possessed bags of crack cocaine concealed in their private areas. Officer Salvatore testified, without objection from the defense, that the quantity of drugs found on Appellant's person was more than is typically possessed for personal use.

From these facts, it was permissible for the jury to infer that Appellant was not merely present at the scene but, instead, that he and Woods shared a criminal objective and intent to sell crack cocaine. Thus, Appellant's conviction for criminal conspiracy is supported by sufficient evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/19