J-A25033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES MICHAEL SAYLOR | : | |
| | : | |
| Appellant | : | No. 2020 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 30, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005285-2018

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:            **FILED MARCH 02, 2021**

Appellant, James Michael Saylor, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his jury trial convictions for first-degree murder, harassment, ethnic intimidation, recklessly endangering another person ("REAP"), and accidents involving damage to an attended vehicle or property.[1] We affirm.

The relevant facts and procedural history of this case are as follows. Appellant spent the evening of July 20, 2018, drinking alcohol in his cousin's garage and at the Glad Crab Bar and Restaurant. Appellant then visited the Red Rose Bar and Lounge in the early morning hours of July 21, 2018, where he continued to drink. While at the Red Rose, Appellant instigated a verbal

---

[1] 18 Pa.C.S.A. §§ 2502(a), 2709(a)(7), 2710(a), 2705, and 75 Pa.C.S.A. § 3743(a).

altercation with Jerrell Grandison-Douglas, during which Appellant repeatedly called Mr. Douglas a racial slur.  As a result, Red Rose staff escorted Appellant out of the bar.  Surveillance video from outside of the bar showed Appellant shooting his gun toward the bar as he walked away from the building.  After talking to Mr. Douglas following his altercation with Appellant, Mr. Douglas' friend, Victim, also exited the bar.  The surveillance footage showed Victim approaching Appellant's vehicle in the parking lot.  Following a brief interaction at the driver-side window of the vehicle, Appellant shot and killed Victim.  While attempting to flee from the scene, Appellant struck an Uber driver's car.

The trial court summarized the relevant procedural history as follows:

> [Appellant] was charged with: murder of the first degree under 18 [Pa.C.S.A.] § 2502(a), harassment under 18 [Pa.C.S.A.] § 2709(a)(7), ethnic intimidation under 18 [Pa.C.S.A.] § 2710(a), [REAP] under 18 [Pa.C.S.A.] § 2705, accidents involving damage to attended vehicle or property under 75 [Pa.C.S.A.] § 3743(a), and murder of the third degree under 18 [Pa.C.S.A.] § 2502(c). …
>
> *   *   *
>
> Following a jury trial on September 23, 2019, through September 26, 2019, the jury unanimously convicted [Appellant] of first-degree murder, harassment, ethnic intimidation, [REAP], and accidents involving damage to attended vehicle or property.
>
> On October 30, 2019, a sentencing proceeding was held. On Count 1, first-degree murder, [Appellant] was sentenced to life imprisonment in a state correctional institution without the possibility of parole.  On Count 2, harassment, [Appellant] was sentenced to three to six months' incarceration in a state correctional institution.  On Count 3, ethnic intimidation, [Appellant] was sentenced to three to six months' incarceration in a state correctional institution.

Counts 2 and 3 run concurrent to one another and consecutive to Count 1. On Count 4, [REAP], [Appellant] was sentenced to six to twelve months' incarceration in a state correctional institution. Count 4 runs consecutive to Counts 2 and 3. On Count 5, accidents involving damage to attended vehicle or property, [Appellant] was sentenced to twelve months' probation. Count 5 runs concurrent with Count 1.

On November 7, 2019, [Appellant] filed a post-sentence motion…moving for a judgment of acquittal, a new trial or a modification of sentence. On November 14, 2019, this Court denied [Appellant]'s post-sentence motion.

*     *     *

On December 10, 2019, [Appellant]…filed a notice of appeal to the Superior Court. On the same day…[Appellant] filed a statement of errors complained of on appeal….

(Trial Court Opinion, filed February 13, 2020, at 2-4).

On appeal, Appellant raises six issues:

Whether the trial court erred in ruling that the evidence was sufficient to support the *mens rea* for first-degree murder?

Whether the trial court erred in ruling that the verdict for first-degree murder was not against the weight of the evidence?

Whether the trial court erred in not severing the homicide charges from the ethnic intimidation and other charges, resulting in prejudice?

Whether the trial court erred in precluding the defense toxicology expert from testifying about his opinion regarding [Appellant's] state of mind at the time of the killing?

Whether the trial court erred in refusing to give Standard Jury Instruction 9:501A Justification: Use of Force/Deadly Force in Self-Defense (Castle Doctrine) and other related justification instructions, where there was sufficient evidence presented at trial, from whatever source, to permit

the issue to go to the trier of fact?

Whether the trial court erred in precluding character evidence from being introduced on [Appellant's] behalf?

(Appellant's Brief at 9).

In his first and second issues on appeal, Appellant argues the Commonwealth failed to present sufficient evidence to prove Appellant had the necessary *mens rea* to commit first-degree murder, where the surveillance video from the bar revealed evidence to support a "justification defense under the castle doctrine." (Appellant's Brief at 17). Appellant maintains the court mistakenly found that "[Appellant] did a very calculated and deliberate move of his vehicle when he moved out of the parking spot to approach and kill [Victim]." (***Id.*** at 16). Appellant claims that, in so finding, the court ignored video proof that it was Victim who took multiple steps toward Appellant's driver-side door and remained there for several seconds before the shooting. Given the events portrayed in the video footage, coupled with the court's refusal to instruct the jury on a justification defense, Appellant asserts the evidence was insufficient to support the jury's verdict as to the *mens rea* element of first-degree murder.

Appellant also states the evidence was insufficient to prove he had the specific intent to kill Victim where undisputed evidence showed he had consumed copious amounts of alcohol prior to the shooting. Appellant stresses that the court emphasized the testimony of some witnesses, particularly the Red Rose employees responsible for serving the excessive

amount of alcohol to Appellant, over other witnesses who testified that Appellant had several angry outbursts throughout the evening. Appellant claims the court also emphasized that Appellant had no issues operating a vehicle, even though Appellant struck the Uber vehicle twice while attempting to exit the parking lot. For reasons similar to his sufficiency argument, Appellant also maintains the jury's verdict was against the weight of the evidence. Appellant concludes this Court should vacate the judgment of sentence or remand for a new trial. We disagree.

Preliminarily, as a general rule, issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived for appellate review. **Commonwealth v. Castillo**, 585 Pa. 395, 888 A.2d 775 (2005). A Rule 1925(b) statement that is not specific enough for the trial court to identify and address the issues the defendant wishes to raise on appeal may also result in waiver. **Commonwealth v. Reeves**, 907 A.2d 1 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007).

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

**Id.** at 2.

Additionally, "when challenging the sufficiency of the evidence on

appeal, [an appellant's Rule 1925(b)] statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009), *appeal denied*, 607 Pa. 690, 3 A.3d 670 (2010). "Such specificity is of particular importance in cases where [an appellant] was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.*

Instantly, Appellant failed to raise his weight and sufficiency of the evidence claims with any specificity in his Rule 1925(b) statement. Appellant's statement merely states: (1) "Did the Trial Court err in ruling that the evidence was sufficient to support the verdicts?" and (2) "Did the Trial Court err in ruling that the verdicts were not against the weight of the evidence?" (Appellant's Rule 1925(b) statement at 1, unpaginated). The Rule 1925(b) statement did not identify which convictions Appellant sought to challenge, which elements of those convictions the Commonwealth failed to prove, or why the verdicts shocked one's sense of justice. Thus, Appellant's challenges to the weight and sufficiency of the evidence are waived for purposes of our review. *See Gibbs, supra*; *Reeves, supra*. *See also Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa.Super. 2002) (stating appellant's weight of evidence claim was waived where he merely asserted in his Rule 1925(b) statement that "[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges").

In his third issue, Appellant argues he made an oral motion during a pretrial conference on April 23, 2019, to sever the ethnic intimidation and harassment charges from the homicide charges. Appellant asserts the evidence established no link between what occurred inside the Red Rose and Victim's shooting in the parking lot. Appellant avers that by permitting these offenses to be tried together, he was denied the opportunity to present character testimony that would have been admissible in a trial for the lesser charges but was ruled inadmissible for the homicide charges. Appellant concludes the court erred in refusing to sever the charges, and this Court should grant appropriate relief. We disagree.

Our standard of review of the denial of a motion to sever is as follows: "Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion." *Commonwealth v. Brookins*, 10 A.3d 1251, 1255 (Pa.Super. 2010), *appeal denied*, 610 Pa. 625, 22 A.3d 1033 (2011).

> The traditional justification for permissible joinder of offenses or consolidation of indictments appears to be the judicial economy which results from a single trial. The argument against joinder or consolidation is that where a defendant is tried at one trial for several offenses, several kinds of prejudice may occur: (1) [t]he defendant may be confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence of the various

offenses to find guilt when, if the evidence of each offense had been considered separately, it would not so find.

***Commonwealth v. Janda***, 14 A.3d 147, 155 (Pa.Super. 2011) (quoting

***Commonwealth v. Morris***, 493 Pa. 164, 171, 425 A.2d 715, 718 (1981)).

"Thus[,] in arriving at a meaningful standard to guide the trial court in its exercise of discretion, and to permit appellate courts to determine whether the trial court abused this discretion, we must weigh the possibility of prejudice and injustice caused by the consolidation against the consideration of judicial economy." ***Id.***

Pennsylvania Rule of Criminal Procedure 582 provides, in pertinent part:

**Rule 582.  Joinder—Trial of Separate Indictments or Informations**

**(A)  Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a)  the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b)  the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).  Pennsylvania Rule of Criminal Procedure 583 provides:

**Rule 583.  Severance of Offenses or Defendants**

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants

- 8 -

being tried together.

Pa.R.Crim.P. 583. "Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." *Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa.Super. 2010), *appeal denied*, 607 Pa. 709, 5 A.3d 818 (2010).

> The prejudice of which Rule 583 speaks is, rather, that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Id.* (quoting *Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa.Super. 2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (2003)).

> Where the defendant moves to sever offenses not based on the same act or transaction…the court must therefore determine: (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Dozzo, supra* at 902 (quoting *Commonwealth v. Collins*, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998)). Thus, a court must first determine whether evidence of each of the offenses would be admissible in a separate trial for the other.

***Dozzo, supra***.  Evidence of other crimes is not admissible solely to show the

defendant's bad character or propensity to commit crimes.  ***Id.***

Nevertheless, evidence of other crimes is admissible to demonstrate:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

***Janda, supra*** at 156 (quoting ***Morris, supra*** at 175, 425 A.2d at 720).

"Additionally, evidence of other crimes may be admitted where such evidence

is part of the history of the case and forms part of the natural development of

the facts."  ***Dozzo, supra*** at 902 (quoting ***Collins, supra*** at 55, 703 A.2d at

423).

Pennsylvania Rule of Criminal Procedure 578 also provides in relevant

part:

> **Rule 578.  Omnibus Pretrial Motion for Relief**
>
> Unless otherwise required in the interests of justice, all pretrial requests for relief shall be included in one omnibus motion.
>
> *Comment:* Types of relief appropriate for the omnibus pretrial motions include the following requests:
>
> *    *    *
>
> (2)    for severance and joinder or consolidation;
>
> *    *    *

Pa.R.Crim.P. 578. Failure to include an issue in a pretrial motion may result in waiver of the claim. *See* Pa.R.Crim.P. 583, C*omment* (stating: "Under Rule 578 (Omnibus Pretrial Motion for Relief), any request for severance must ordinarily be made in the omnibus pretrial motion or it is considered waived unless a later filing is permitted under the exceptions enumerated in Rule 579").

Instantly, Appellant's formal arraignment occurred on October 5, 2018. Therefore, the window during which Appellant could file a pretrial motion expired on November 4, 2018. *See* Pa.R.Crim.P. 579 (explaining defendant typically has 30 days after formal arraignment to file pretrial motions). Nevertheless, during a pretrial conference on April 23, 2019, Appellant made an oral motion to sever the ethnic intimidation and harassment charges from the homicide charges. As Appellant failed to include this request in a timely omnibus pretrial motion, it is arguably waived. *See* Pa.R.Crim.P. 578; Pa.R.Crim.P. 583.

Moreover, even if Appellant had properly raised this claim, his argument would fail. Here, Appellant's actions inside and outside of the Red Rose would constitute admissible evidence in each case if the court had conducted separate trials, where the crimes demonstrate a sequence of events that formed the history and natural development of the case. *See* Pa.R.Crim.P. 582; *Dozzo, supra*. Additionally, as each crime involved different victims, it would not have been difficult for a jury to distinguish between the charges.

Thus, Appellant failed to show how he would suffer the requisite prejudice by trying the charges together, and the court did not abuse its discretion in denying Appellant's severance motion. *See Brookins, supra*; *Dozzo, supra*.

In his fourth issue, Appellant argues the court erred in precluding the defense toxicology expert from testifying to Appellant's state of mind at the time of the shooting. Specifically, Appellant contends Dr. Lawrence Guzzardi was prohibited from opining that, due to Appellant's level of intoxication, Appellant was unable to premeditate the killing. Appellant attacks the court's conclusion that any opinion Dr. Guzzardi gave on Appellant's state of mind would have been mere conjecture because Appellant told Dr. Guzzardi he could not remember the incident. Rather, Appellant claims Dr. Guzzardi formulated his report after also reviewing the relevant discovery and numerous witness statements, and maintains this information was sufficient for Dr. Guzzardi to form an opinion as to Appellant's level of intoxication on the night of Victim's shooting. Appellant asserts that the preclusion of this testimony was prejudicial, as its exclusion was critical to the jury finding that Appellant acted with the specific intent to kill. Appellant concludes this Court should vacate the judgment of sentence and remand for a new trial. We disagree.

"Our standard of review in cases involving the admission of expert testimony is broad: Generally speaking, the admission of expert testimony is

- 12 -

a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." ***Commonwealth v. Watson***, 945 A.2d 174, 176 (Pa.Super. 2008) (internal citation and quotation marks omitted). "An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice." ***Id.***

Pennsylvania Rule of Evidence 702 governs the admission of expert testimony and provides:

> **Rule 702.  Testimony by Expert Witnesses**
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c)  the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.  Furthermore, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703.

Nevertheless,

> While an expert's opinion need not be based on an absolute certainty, an opinion based on mere possibilities is not competent evidence.  This means that expert testimony cannot be based solely upon conjecture or surmise.  Rather, an expert's assumptions must be based upon such facts as

- 13 -

the jury would be warranted in finding from the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 727 (Pa.Super. 2015), *appeal denied*, 633 Pa. 763, 125 A.3d 1198 (2015) (internal citation omitted).

Instantly, the court expressed its concerns regarding Dr. Guzzardi's expert report prior to the doctor's testimony and outside of the jury's presence. Specifically, the court took issue with Dr. Guzzardi asserting that the odor of alcohol on Appellant's breath eight hours after the incident at the Red Rose indicated a blood alcohol content of 0.16, without having laid any foundation to establish its scientific certainty. The court also expressed its concern that Dr. Guzzardi had nothing to base the opinions in his report upon where Appellant claimed to have no memory of the incident. During this conversation, the court prohibited Dr. Guzzardi from using the term "premeditation," and defense counsel agreed to this restriction as follows:

> The Court: …So, I have looked at the report and I have some concerns, quite frankly, about the report in a number of different aspects. …
>
> But [Dr. Guzzardi] makes some statement in this report that he hasn't indicated anywhere therein what, to be polite here, what the basis of those statements are.
>
> I mean, we are not going to get into a situation where I can look at somebody and tell them what their blood alcohol content is. That is not coming into the record. Or I can smell somebody's breath and say what their blood alcohol content is? No.
>
> [Defense Counsel]: I don't know if Dr. Guzzardi quite said it like that.
>
> The Court: Pretty much he did. Page 3. He wasn't present

even to smell it, but now he is saying [Appellant] had an odor of alcohol on his breath 8 hours after his incident indicating a level of .16.

[Defense Counsel]: He reviewed all the[…]

The Court: What?

[Defense Counsel]: Reports. I'll instruct him not to talk about that.

The Court: I don't care how many reports he has looked at that describe in various different ways whether [Appellant] was intoxicated or not, you cannot make a statement just because someone has alcohol on their breath 8 hours later that their BAC is .16 with any degree of scientific certainty.

[Defense Counsel]: Quite frankly, Your Honor, I mean, he is an expert in this field. I think he could back that up with justification.

The Court: Well, you have to lay a whole lot of foundation that's not anywhere in this report. …

\* \* \*

The Court: He is not going to use the word premeditation.

[Defense Counsel]: Understood. I don't think the rest of it is an issue.

\* \* \*

[Defense Counsel]: And stay away from the premeditation on the very last page.

[The Commonwealth]: Premeditation is also mentioned in the first paragraph of Page 3. He did not understand the nature of his actions nor did he deliberate and with understanding—

The Court: And I was wondering where that even came from. Like, whose opinion is stated in that. Is he stating of [Appellant]…or is he speaking of a professional opinion

- 15 -

because it doesn't really say.

[Defense Counsel]: I believe it is from the professional opinion, Your Honor. But I can instruct him to stay away from that as well.

The Court: Again, he cannot state it the way he is stating it.

[Defense Counsel]: I understand.

The Court: The understanding of the nature of his actions in a jury determination.

[Defense Counsel]: Understood, Your Honor, and I'm just marking this.

The Court: Especially when we go down 4 paragraphs, the last sentence. [Appellant] just doesn't remember the incident. So, where is [Dr. Guzzardi] getting the basis for all of these opinions?

[Defense Counsel]: Well, it is in all the reports, Your Honor. That from the police that he didn't remember the incident. He has reviewed—he has reviewed the CDs of the interviews with police officers and my client and he also spoke to my client at the prison. That one there my client does not remember anything. He told the police that and he told—

The Court: So, if your client doesn't remember anything, how is the doctor saying what he was thinking or wasn't thinking?

[Defense Counsel]: I think Dr. Guzzardi is just saying he is repeating what he has observed and reviewing for this case, Your Honor, that he doesn't remember what was said or done that night. Again, I'm sorry, which paragraph are you looking at?

The Court: The fourth paragraph of that same page, after we talk[ed] about—or right before we talk about blood alcohol based on smell alone, he says, [Appellant] just doesn't remember the incident. So, if that's his opinion or that's what he has gleaned from reading all of these reports, how is he even drafting an opinion[?]

[Defense Counsel]: What do you mean?  I don't understand that.

The Court: What is he basing his opinion on?

[Defense Counsel]: What was said in the reports and what my client said to him.  I would lay the foundation.

The Court: How can you say what your client said to him if your client doesn't remember anything?

[Defense Counsel]: That is what my client said to him.  He doesn't remember anything.  The same thing he told everyone else.  …  It is just that he had a conversation with my client, that's what my client told him, and that's what the police reports say over and over again.  …

(N.T. Trial, 9/25/19, at 589-594).

Here, defense counsel agreed to prohibit Dr. Guzzardi from utilizing the word "premeditation" in his testimony.  Appellant cannot now base his appeal upon something to which his counsel agreed.  Furthermore, we concur with the court's concerns regarding Dr. Guzzardi's ability to testify about Appellant's state of mind at the time of Victim's shooting, where Appellant claims to have no memory of the incident.  Without Appellant's input regarding his thoughts and actions on the night of Victim's shooting, Dr. Guzzardi's opinion as to those events constitutes pure conjecture.  **See Gonzalez, supra**.  Thus, this claim fails.

In his fifth issue, Appellant argues the court erred in denying his request to instruct the jury on a justification defense under the castle doctrine.  Appellant claims the court determined it would not instruct the jury on

justification because Appellant had no recollection of the events leading up to Victim's murder. Appellant, however, contends the court ignores the "express language of the castle doctrine that creates a presumption in favor of [Appellant] where…he was approached by an unknown individual while in his vehicle." (Appellant's Brief at 27). Appellant maintains that the surveillance video provided sufficient evidence to have permitted the issue of justification to go to the jury, as it shows Victim approaching Appellant's driver-side door as Appellant attempted to exit the parking lot and remaining there for several seconds before the shooting occurred. Appellant asserts the video does not comport with the testimony of the Uber driver, upon which the trial court heavily relied, that Victim took a half step toward Appellant's vehicle and was immediately shot. Appellant avers the court's refusal to issue the requested jury instruction was prejudicial as it could have provided a complete defense to the homicide charge. Appellant concludes this Court should vacate the judgment of sentence and remand for a new trial. We disagree.

"[T]o preserve a claim that a jury instruction was erroneously given, the [a]ppellant must have objected to the charge at trial." ***Commonwealth v. Parker***, 104 A.3d 17, 29 (Pa.Super. 2014), *appeal denied*, 632 Pa. 669, 117 A.3d 296 (2015). Our Supreme Court has explained:

> The pertinent rules [of criminal procedure] require a specific objection to the [jury] charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the

requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue. This is particularly so where a judge believes that the charge adequately covered the proposed points.

*Commonwealth v. Pressley*, 584 Pa. 624, 630-31, 887 A.2d 220, 224 (2005) (internal citations and footnotes omitted). *See also* Pa.R.Crim.P. 647(c) (explaining that no portions of jury charge nor omissions from charge may be assigned error, unless specific objections are made thereto before jury retires to deliberate); *Commonwealth v. Cosby*, 224 A.3d 372 (Pa.Super. 2019), *appeal granted in part on other grounds*, ___ Pa. ___, 236 A.3d 1045 (2020) (holding appellant waived challenge to court's consciousness-of-guilt jury instruction because he did not object when charge was given to jury; appellant's objections at charging conference were insufficient to preserve his challenge on appeal); *Parker, supra* (holding appellant waived challenge to jury instruction where he failed to object after court read jury charge; although appellant expressly objected to flight charge at charging conference, defense counsel responded negatively when court asked if any additions or corrections to jury charge needed to be made after court issued jury instructions).

Instantly, Appellant asked the court to issue a jury instruction for "the justification use of force…as self-defense." (N.T. Trial, 9/25/19, at 713). The Commonwealth objected to Appellant's request. Ultimately, the court decided

the jury instruction was unwarranted based on the evidence presented. Significantly, after the court issued its jury charge, Appellant did not lodge an objection to the court's omission of the justification/self-defense jury instruction. The court expressly asked counsel if there were any exceptions to the jury charges, and defense counsel responded: "No, Your Honor." (**Id.** at 884). Under these circumstances, Appellant did not preserve his claim of error for appellate review. **See** Pa.R.Crim.P. 647(c); **Cosby, supra**; **Parker, supra**. Consequently, Appellant's fifth issue on appeal is waived.

In his sixth issue, Appellant argues the court erred in prohibiting character evidence from being introduced on Appellant's behalf. Appellant contends the court excluded character evidence based upon **Commonwealth v. Kim**, 888 A.2d 847 (Pa.Super. 2005), *appeal denied*, 587 Pa. 721, 899 A.2d 1122 (2006), which held that character evidence is not admissible to support a diminished capacity defense. Appellant avers he was not solely arguing a voluntary intoxication defense, as he also requested (but the court denied) a justification instruction under the castle doctrine. Appellant maintains character evidence would have been admissible regarding a claim of self-defense, and Appellant's inability to present evidence concerning his reputation for peacefulness and non-violence was prejudicial. Appellant further asserts that he was charged with multiple crimes unrelated to Victim's shooting, including harassment, ethnic intimidation, REAP, and accidents involving damage to an attended vehicle. Appellant submits that character

evidence was "paramount" to the jury's consideration of these other offenses. Appellant concludes this Court should vacate the judgment of sentence and remand for a new trial. We disagree.

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." **Commonwealth v. Ballard**, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), *cert. denied*, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

**Commonwealth v. Goldman**, 70 A.3d 874, 878-79 (Pa.Super. 2013), *appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Commonwealth v. Lopez**, 57 A.3d 74, 81 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

As this Court has previously explained:

> …Pennsylvania law is clear that while character evidence is admissible to prove that a defendant did not commit the charged crime, it is inadmissible where the issue is whether the defendant had a specific intent to kill or did not have

that intent due to diminished capacity. In this regard, the diminished capacity defense concedes criminal liability for murder but asserts that appellant lacked the capacity to form the specific intent to kill. Therefore, good character evidence [is] not admissible to support a diminished capacity defense.

*Kim, supra* at 853 (internal citations and quotation marks omitted) (citing

*Commonwealth v. Gwynn*, 555 Pa. 86, 103, 723 A.2d 143, 151 (1998),

*cert. denied*, 528 U.S. 969, 120 S.Ct. 410, 145 L.Ed.2d 320 (1999)).

Significantly, diminished capacity defenses include voluntary intoxication.

*See Commonwealth v. Mason*, 634 Pa. 359, 408, 130 A.3d 601, 630 (2015)

(stating: "To establish a diminished capacity defense, a defendant must prove

that his cognitive abilities of deliberation and premeditation were so

compromised, by mental defect or voluntary intoxication, that he was unable

to formulate the specific intent to kill").

In applying *Kim* to the instant facts, the trial court reasoned as follows:

Similar to *Kim*, [Appellant] was charged with the first-degree murder, as well as other lesser crimes. Like *Kim*, [Appellant] pursued a defense of voluntary intoxication and diminished capacity. [Appellant] tried to argue that because he was so intoxicated, he did not have the required mental state to commit all the crimes charged against him, although he did kill [Victim].

The record reveals that, during the course of [the trial court]'s discussions about whether the character evidence as to [Appellant]'s peacefulness should be allowed, [Appellant] did not convince this [c]ourt that character evidence would be proper and cited to no authorities to support his argument.

(Trial Court Opinion at 31-32). We agree with the trial court's analysis. Here,

the trial court properly determined that Appellant's proffered character evidence was inadmissible under **Kim**, where Appellant conceded that he shot and killed Victim but claimed a diminished capacity/voluntary intoxication defense. Furthermore, defense counsel failed to present any argument or supporting authority to the contrary. Therefore, we see no reason to disrupt the court's evidentiary ruling. **See Goldman, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/02/2021